# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

T. H.,                              :
               Petitioner   :   **CASES SEALED**
                                 :
         v.                      :   No. 1181 C.D. 2015
                                 :
Department of Human Services,       :
             Respondent   :
                                 :
J. R.,                              :
               Petitioner   :
                                 :
         v.                      :   No. 1205 C.D. 2015
                                 :   Submitted: February 12, 2016
Department of Human Services,       :
             Respondent   :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                        **FILED: August 22, 2016**

Before this Court are the separate petitions for review of T.H. (Mother) and J.R. (Father) from the Order of the Department of Human Services (Department), Bureau of Hearings and Appeals (Bureau), adopting an Administrative Law Judge's (ALJ) Recommendation denying Mother's and Father's separate appeals from indicated reports identifying them as perpetrators of child abuse on the ChildLine Registry (Registry) under the Child Protective Services Law (CPSL).[1]

---

[1] 23 Pa. C.S. §§ 6301-6386.

On appeal, Mother argues the Bureau erred in finding that the County Children and Youth Services (CYS) met its burden of proving that she was a perpetrator of child abuse based on the presumption set forth in Section 6381(d) of the CPSL, 23 Pa. C.S. § 6381(d), and, even if it had, she rebutted that presumption. Father asserts that his appeal should have been granted because the record lacked clear and convincing evidence establishing that he was the perpetrator of child abuse and that the presumption relied upon should not have applied to him because he had only limited access to Child. Because the fact finder did not resolve evidentiary conflicts regarding Mother's and Father's rebuttal evidence and whether that evidence did rebut the Section 6381(d) presumption against Mother and/or Father, we vacate and remand for a new decision.

## I.    Background

S.R. (Child) was born on September 16, 2012, and was approximately one month to four months old at the time of the abuse. Mother and Father are Child's biological parents but do not live together. It is undisputed that between Child's birth and January 2013, Child was the victim of multiple instances of non-accidental physical abuse resulting in:

> bruising on the chest area on December 23, 2012, six (6) broken ribs on the subject child's right side between ribs three (3) and eight (8), several bilateral subdural hematomas of varying ages, retinal hemorrhaging, all of which are consistent with Shaken Baby Syndrome.

(ALJ Adjudication, Findings of Fact (FOF) ¶ 9.) "[C]hild suffered severe pain as a result of the injuries." (Id. ¶ 10.) On January 21, 2013, CYS received a referral indicating that Child was being physically abused.[2]

Following an investigation, during which CYS reviewed Child's medical records and neither Mother nor Father offered an explanation for how Child's injuries occurred beyond blaming each other, CYS filed indicated reports identifying Mother and Father as perpetrators of child abuse.[3] (Id. ¶ 13.)  CYS

---

[2] CYS has intervened in these petitions for review.

[3] At the time the abuse occurred here, the CPSL defined "child abuse," in relevant part, as:

> (b) Child abuse.
>   (1) The term "child abuse" shall mean any of the following:
>     (i) Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age.
>                    * * *
>     (iii) Any recent act, failure to act or series of such acts or failures to act by a perpetrator which creates an imminent risk of serious physical injury to or sexual abuse or sexual exploitation of a child under 18 years of age.
>     (iv) Serious physical neglect by a perpetrator constituting prolonged or repeated lack of supervision or the failure to provide essentials of life, including adequate medical care, which endangers a child's life or development or impairs the child's functioning.

23 Pa. C.S. § 6303(b). "Serious physical injury" was defined at the time of Child's injury as "[a]n injury that: (1) causes a child severe pain; or (2) significantly impairs a child's physical functioning, either temporarily or permanently." 23 Pa. C.S. § 6303(a). These definitions, among others, were amended, effective December 31, 2014, to significantly broaden the term "child abuse." Section 6303(b) now provides, in relevant part:

> Child abuse.—The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
> (1) Causing bodily injury to a child through any recent act or failure to act.

*(Continued…)*

3

also filed a dependency petition alleging that Child had been a victim of child abuse, and after several dependency hearings were held, on April 16, 2013, the Court of Common Pleas (common pleas) adjudicated Child dependent and a victim of child abuse. Common pleas did not determine that either parent was the perpetrator. Mother's motion for expedited permanency review was granted and, on June 11, 2013, common pleas ordered that the Child be returned to Mother's home with certain conditions. Upon appeal by CYS, the Superior Court affirmed common pleas' order returning Child to Mother's physical custody.[4]

After the Superior Court decision, Mother and Father timely filed appeals seeking expunction of their indicated reports from the Registry. Neither Mother nor Father testified at the hearing before the ALJ. However, they submitted transcripts and exhibits from the dependency action in common pleas. Also entered into the record were common pleas' opinion filed pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Practice, Pa. R.A.P. 1925(a),[5] and the

---

* * *

(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

* * *

(7) Causing serious physical neglect of a child.

23 Pa. C.S. § 6303(b.1). "Bodily injury" is now defined as "[i]mpairment of physical condition or substantial pain." 23 Pa. C.S. § 6303(a).

[4] The Superior Court's opinion can be found at Mother's R.R. at 418a-42a.

[5] Rule 1925(a) provides, in pertinent part,

[e]xcept as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order . . . .

Pa. R.A.P. 1925(a).

4

Superior Court's opinion affirming common pleas' order returning physical custody of Child to Mother with visitation rights for Father.

CYS acknowledged at the hearing "that it could not positively identify which [parent] had committed physical abuse upon . . . [C]hild." (FOF ¶ 15.) However, it argued that the record clearly shows that physical child abuse occurred, both parents had custody of Child during the time period when the child abuse occurred, and it established a *prima facie* case of child abuse against both Mother and Father. Thus, applying the presumption set forth in Section 6381(d) of the CPSL, 23 Pa. C.S. § 6381(d), that a parent or person responsible for the welfare of the child is the perpetrator of any alleged child abuse, CYS asserted that both Mother and Father were perpetrators unless they rebutted the presumption. Mother and Father did not dispute that Child had been abused, but denied having any personal involvement in the physical abuse of Child. Instead, both claimed that the other parent was responsible for the injuries. Additionally, Mother and Father argued that CYS cannot maintain indicated reports against *both* of them because CYS cannot definitively prove which parent abused Child.

The ALJ reviewed the evidence and found that Mother and Father were Child's sole caretakers during the relevant time period. (FOF ¶ 5.) Mother had primary custody of Child, and Father had visitation and custodial rights to visit Child every other weekend. (Id. ¶¶ 6-7.) When Father would visit Child, Mother would go to Father's house, pick him up and bring him back to her house for the night, and then would return Father to his home on Saturday or Sunday. (Id. ¶ 8.) The ALJ then considered Section 6381(d) of the CPSL, which provides:

> **(d) Prima facie evidence of abuse.** - - Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the

5

parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa. C.S. § 6381(d). The ALJ noted that in In re L.Z., 111 A.3d 1164 (Pa. 2015), the Supreme Court had recently rejected this Court's interpretation of Section 6381(d) that the presumption could be applied only where there was one caretaker, as set forth in J.W. v. Department of Public Welfare, 9 A.3d 270, 273 (Pa. Cmwlth. 2010). Citing to Babcock & Wilcox, Co. v. Workmen's Compensation Appeal Board, 437 A.2d 778, 780 (Pa. Cmwlth. 1981), the ALJ concluded that this change applied to the pending appeals of Mother and Father and that he could use the L.Z. interpretation of Section 6381(d) to determine whether the presumption could be applied to both Mother and Father notwithstanding CYS's inability to prove which of the two actually abused Child. (ALJ Adjudication at 7.)

The ALJ determined that CYS established a *prima facie* case of child abuse, citing the clear evidence of child abuse and the fact that Mother and Father "were the two people retaining control and custody of the child during the time frame in which the abuse occurred." (Id. at 10.) Therefore, the Section 6381(d) presumption applied to Mother and Father and the burden then shifted to them to rebut the presumption. L.Z., 111 A.3d at 1185. Because Mother and Father did not present evidence that rebutted the presumption, instead relying on pre-L.Z. cases holding that the presumption cannot be applied where there are multiple caregivers and on documentary evidence in which each asserted that the other was responsible for Child's injuries, the ALJ denied Mother's and Father's administrative appeals. (ALJ Adjudication at 10-11.) After review, the Bureau

6

adopted the Recommendation in its entirety. Mother and Father separately petitioned this Court for review.[6]

## II. Arguments on Appeal

### A. *Mother's and Father's Arguments*

Mother argues that the Bureau erred because CYS has not presented substantial evidence identifying her as the perpetrator in the physical abuse of Child where that same evidence was rejected by common pleas and the Superior Court in the dependency action as not even establishing a *prima facie* case against Mother. Mother points out that common pleas noted that "'no court has found Mother to have perpetrated abuse on the minor child in any way.'" (Mother's Br. at 21 (quoting common pleas' 1925(a) Op. at 8, Mother's R.R. at 417a).) Mother argues that, even applying the presumption from Section 6381(d) as interpreted in L.Z., CYS could not meet the heightened substantial evidence burden of proof in the present matter on the evidence rejected by common pleas and the Superior Court. Mother maintains that this is not a situation where she "failed to act" on Child's behalf because she took Child to the physician on numerous occasions and it was unknown that Child had any internal injuries until after 11 physician's visits.[7]

Mother also contends that the Bureau erred in denying her appeal based on its conclusion that she did not present evidence to rebut the presumption. Mother asserts that she submitted testimony and exhibits from the dependency proceedings

---

[6] "This Court's review is limited to determining whether legal error has been committed, whether constitutional rights have been violated, or whether the necessary findings of fact are supported by substantial evidence." F.R. v. Department of Public Welfare, 4 A.3d 779, 782 n.7 (Pa. Cmwlth. 2010).

[7] Mother's third issue in her brief essentially reiterates her arguments on this issue.

that rebuts the presumption that she was a perpetrator, namely that she was the one who initially reported Child's injuries to CYS and she sought treatment for Child once she became aware of any injuries.

Father also argues, citing evidence from Child's dependency hearing and common pleas' determination that there was insufficient evidence to determine which parent abused Child, that maintaining an indicated report naming him as a perpetrator is erroneous. Father asserts that L.Z. is distinguishable because a different level of proof was required in the dependency hearing at issue in L.Z., than required in the present matter.[8] Father further maintains that he had limited access to Child and what access he had was under Mother's supervision. In contrast, Father argues, Child was alone with Mother the majority of the time, was with the child of one of Mother's paramours, or with one of Child's half-siblings. Father claims that this is not an L.Z. situation where the alleged perpetrators had equal access to or daily interactions with the child because he had little opportunity to be alone to inflict injuries on Child and, therefore, it does not make sense to apply the presumption and L.Z. to him.

---

[8] Father also asserts that the ALJ erred in relying on evidence presented at Child's shelter care hearing, where hearsay testimony is permissible and the rules of evidence are relaxed. However, our review of the record reveals that the only document offered at the ALJ hearing related to the shelter care proceedings was common pleas' January 28, 2013, addendum order, which made "certain findings of fact relevant to broken ribs, bruising," indicated that Child was the victim of Shaken Baby Syndrome, and stated that the identity of the abusers had not been determined yet. (Mother's R.R. at 3a-5a, 452a.) The ALJ accepted the document for the purpose of "going towards the scope of the fact that there was physical child abuse in this case, *not revealing the identities*" of the perpetrators. (Mother's R.R. at 457a (emphasis added).) Thus, we disagree that the ALJ relied on any evidence from the shelter care hearing to make findings regarding the identity of the perpetrators in the Adjudication.

## B. The Department's and CYS's Arguments

The Department argues that the Bureau did not err in concluding that CYS established a *prima facie* case against Mother and Father so as to trigger the presumption because, following L.Z.'s interpretation of Section 6381(d), there is no longer a requirement that CYS prove that the individual was physically present at the time the actual physical abuse occurred. L.Z., 111 A.3d at 1183-85. The Department asserts that the Supreme Court's holding in L.Z. is particularly relevant here where Child is too young to describe the abuse and where the two parties found to be Child's primary caretakers are pointing the finger at each other. CYS agrees with the Department that, as in L.Z., this is precisely the type of situation to which the presumption set forth in Section 6381(d) was meant to apply because Child is too young to identify the abuser and the evidence is inconclusive as to which of Child's primary caretakers committed the abuse. L.Z., 111 A.3d at 1185. According to CYS, the Legislature recognized the difficulty in such situations and enacted Section 6381(d) to reduce a child services agency's burden of proof by creating the presumption in order to "'avoid this evidentiary conundrum and protect children from future abuse.'" (CYS's Br. at 7 (quoting L.Z., 111 A.3d at 1185).) CYS maintains that it presented a *prima facie* case as permitted under Section 6381(d), thereby creating the presumption that Mother and Father were the perpetrators of Child's abuse and shifting the burden to Mother and Father to prove otherwise.

The Department argues that evidence offered by Mother and Father was insufficient to rebut the presumption. With regard to Mother's assertions, the Department reiterates that the fact that common pleas and the Superior Court did not find that there was *prima facie* evidence that Mother abused Child or was

aware of Child's abuse was based on those courts' understanding of Section 6381(d) before L.Z. Further, the Department argues that the evidence relied on by common pleas and the Superior Court, while relevant for deciding whether to return Child to Mother's custody, is not relevant to rebutting the presumption, which, pursuant to L.Z., would require Mother to establish that Child was not in her care or that she had no reason to question leaving Child with Father. L.Z., 111 A.3d at 1186. Finally, the Department contends that Father's assertions that he was not alone with Child and his visits were under the constant supervision of Mother is not supported by the record, in which he admits that he was alone with Child at various points during his visits. Because Child was in the care of both Mother and Father, and Father had unsupervised access to Child, the Department argues that Father's bases for distinguishing L.Z. are insufficient.

## III. Discussion

### A. Whether the presumption established by Section 6381(d), as interpreted by the Supreme Court in L.Z., applies here.

An indicated report is issued by a county agency or the Department if, after an investigation, "'substantial evidence' of the alleged abuse exists based on available medical evidence, the child protective services investigation, or an admission of the facts of abuse by the perpetrator." G.V. v. Dep't of Pub. Welfare, 91 A.3d 667, 671 (Pa. 2014) (citing Section 6303 of the CPSL, 23 Pa. C.S. § 6303). The CPSL defines "substantial evidence" as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion," 23 Pa. C.S. § 6303, and it is the equivalent of the preponderance of the evidence standard, S.T. v. Department of Public Welfare, 681 A.2d 853, 857 n.4 (Pa. Cmwlth. 1996). CYS bears the burden of showing that the

10

indicated report of abuse is accurate and is being maintained in a manner consistent with the CPSL.  G.V., 91 A.3d at 671.

Mother and Father do not dispute that Child was the victim of physical abuse; they initially question whether indicated reports can be maintained against both of them, as Child's parents and primary caregivers, where CYS cannot definitively prove which parent abused Child.  CYS and the Department assert that the answer is "yes" through the use of the presumption established in Section 6381(d) if that presumption is not rebutted.  Section 6381(d) states:

> **(d) Prima facie evidence of abuse.** - - Evidence that a child has suffered abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child *shall be prima facie evidence of child abuse by the parent* or other person responsible for the welfare of the child.

23 Pa. C.S. § 6381(d) (second emphasis added).

As referenced by the parties' arguments, the Supreme Court recently addressed the interpretation of Section 6381(d).  L.Z. involved a twenty-one month old child who lived with and was cared for by his mother and maternal aunt, the non-accidental physical injuries the child sustained while in their joint care, whether the child should be found dependent, and whether the child's caretakers should be identified as the perpetrators of the abuse.  Common pleas found that the child was dependent and the victim of child abuse, the mother was a perpetrator by omission of that abuse as she was the child's primary caretaker, and the child should be removed from the mother's home.  L.Z., 111 A.3d at 1168.  On appeal to the Superior Court, a divided *en banc* majority affirmed common pleas' decision in

11

part and vacated in part,[9] and, focusing on the phrase "at the time of abuse" in Section 6381(d), 23 Pa. C.S. § 6381(d), and several multiple caregiver cases from both that Court and this Court, stated that "Section 6381(d) does not . . . permit the court to designate a parent a perpetrator of abuse where the record fails to establish that the child was in the parent's care at the time of the injury." L.Z., 111 A.3d at 1170 (internal quotation omitted). The dissent would have held that notwithstanding the fact that the mother may not have been present when the actual injuries occurred, she could be listed as a perpetrator of abuse based on her "failure to properly care for and protect [the] child" because the mother and the aunt primarily were responsible for the child and neither testified as to who was responsible for the child when the injuries occurred. Id. at 1171 (internal quotation omitted).

On appeal, the Supreme Court concluded that the intermediate appellate courts had erred in their interpretation of Section 6381(d), and stated that:

> child abuse cases often involve a child presenting to a hospital with significant injuries that are entirely consistent with common types of child abuse and entirely inconsistent with the implausible explanations concocted by the parents and responsible persons to avoid allegations of child abuse. As noted, in cases where multiple caregivers are involved, the individuals frequently "circle the wagons" or alternatively point fingers at each other. As the children may be too young or fearful to describe the abuse, CYS agencies are left to prove their case with only the physical evidence of injuries that would not ordinarily be sustained but for the action of the parents or responsible persons and the implausible statements of the parents and responsible persons. Thus, while they can prove the existence of abuse rather easily, they have no ability to assign responsibility for the heinous act

---

[9] A three-judge panel of the Superior Court initially affirmed the finding of dependency but vacated the finding that the mother was a perpetrator of abuse. The child's Guardian *ad litem* petitioned for reargument *en banc*, which was granted.

12

among the responsible adults. As Judge Tamilia observed in 1993, "the Legislature deemed it wise and necessary to establish a different evidentiary standard" by enacting Section 6381(d)'s presumption to avoid this evidentiary conundrum and protect children from future abuse. [In the interest of] J.R.W., 631 A.2d [1019,] 1023 [Pa. Super. 1993]. We emphasize that, when a child is in the care of multiple parents or other persons responsible for care, those individuals are accountable for the care and protection of the child whether they actually inflicted the injury or failed in their duty to protect the child.

. . . [T]he Legislature balanced the presumption of Section 6381(d) by making it rebuttable as it merely establishes "*prima facie* evidence" that the parent perpetrated the abuse. 23 Pa.[]C.S. § 6381(d). As commonly understood, *prima facie* evidence is "[s]uch evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." Black's Law Dictionary 825 (6th ed. abridged 1991). Accordingly, evidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive.[] The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

Id. at 1185 (footnote omitted).

Applying these principles to the facts in L.Z., the Supreme Court affirmed common pleas' determination that the mother was the perpetrator, using Section 6381(d)'s presumption, because: the child's injuries were not accidental and were "of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child"; and the child was in the care of only the mother and the aunt. L.Z., 111

13

A.3d at 1186 (internal quotation omitted). "Ergo, either [a]unt or [m]other or both inflicted the abuse [c]hild suffered or failed to protect [child] from the other's abuse." Id. While the mother had the opportunity to rebut the presumption, the Court held that she failed to do so because she did not "present[] evidence or testimony from her[self], [a]unt, or her boyfriend establishing that [the c]hild was not in her care when the injuries were suffered and that she had no reason to question her decision to leave [the c]hild in [the a]unt's care." Id.

We must apply the reasoning of L.Z. to the instant case. It is undisputed that Child suffered physical injuries and, because Child was an infant when the abuse occurred, incapable of describing that abuse. Mother's and Father's arguments are premised, essentially, on their assertions that they were not personally present at the time Child sustained the injuries, the other parent was present and responsible for Child, and, therefore, that parent was the perpetrator of the abuse. Moreover, they both argue that the Bureau could not deny their appeals based on evidence that was rejected by common pleas and the Superior Court as not satisfying the *prima facie* evidentiary standard. Therefore, they assert, the evidence presented could not meet the heightened "substantial evidence" requirement of the CPSL.

However, a parent does not have to be actually responsible for the child or physically present with the child at the time of the abuse for the presumption to apply to the child's parent. L.Z., 111 A.3d at 1185-86. "[P]arents are always responsible for their children, absent extenuating circumstances," and, while establishing their lack of physical presence at the time of the abuse could be a way of rebutting the presumption, whether Mother or Father or both were physically present when Child was abused is not determinative of whether the presumption is

triggered in the first instance.[10] Id. at 1184-85. Both Mother and Father can be presumed to be the perpetrators of Child's abuse until one or both rebut the presumption in accordance with L.Z. and, therefore, there was no error in the Bureau's applying the presumption to both Mother and Father.

The decisions of common pleas and the Superior Court in the dependency proceedings do not require a different result. We note that common pleas initially declined to make any finding as to whether either parent was the perpetrator because it did not "have sufficient information to make that finding at this point" and it did "not believe that the specific identity of the perpetrator or perpetrators ha[d] to be made in a [d]ependency proceeding[]." (Mother's R.R. at 406a.) Common pleas further indicated that "[t]he issue of the identification or findings that may be made with regard to the perpetrator or perpetrators can be addressed in further proceedings if appropriate or other proceedings beyond the [d]ependency proceeding. So I am not going to make that finding in this proceeding . . . " (Id.) Subsequently, in its 1925(a) opinion related to the order returning Child to Mother's physical custody, common pleas stated that CYS "ha[d] not presented credible evidence that Mother was the source" of the abuse and that it was "satisfied, at this time, that *there is insufficient evidence to find that Mother committed the physical abuse on [Child] or that she was aware that such abuse was occurring*." (Mother's R.R. at 413a-14a (emphasis added).) Common pleas also stated, in justifying Child's return:

> [t]o this date, no court has found Mother to have perpetrated abuse on
> the minor child in any way. The Agency's determination that Mother,
> in addition to Father, is an indicated child abuser is, at the present

---

[10] In doing so, it appears that the Supreme Court in L.Z. has established that the presumption creates strict liability for parents unless and until the presumption is rebutted.

time, a determination by the Agency alone. The Court has not made that specific determination, nor has it been found that Mother was culpable for the injuries sustained by the child.

(Mother's R.R. at 417a.) However, it is unclear from the dependency hearing transcript or common pleas' 1925(a) opinion whether common pleas applied or considered the presumption set forth in Section 6381(d) in making these determinations. Even if it had done so, the Supreme Court clarified and broadened the interpretation of that presumption in L.Z. after common pleas issued its 1925(a) opinion, and it was this broader interpretation that the ALJ used in the Adjudication here.[11, 12]

Finally, we address the arguments pertaining to the differing burdens of proof associated with dependency proceedings under the Juvenile Act and expungement proceedings under the CPSL. Father is correct that L.Z., a dependency proceeding, involved a different burden of proof (clear and convincing evidence), than the proceeding here, which requires CYS to meet its burden by

---

[11] We note that common pleas had additional evidence to consider when making these subsequent determinations, i.e., a permanency review hearing held on June 5, 2013, that was not provided to the ALJ in this matter. Although the hearing transcripts from the shelter care and dependency proceedings were entered as evidence at the ALJ's hearing, the transcript for the permanency review hearing was not. (Mother's R.R. at 445a.)

[12] In affirming common pleas' order returning Child to Mother's physical custody, the Superior Court concluded that CYS, in its appeal of that order, was arguing that returning Child to Mother was erroneous where common pleas should have found, based on Section 6381(d), that Mother and Father were the perpetrators of the abuse. (Mother's R.R. at 434a.) The Superior Court held that common pleas "had made a determination as to the credibility and weight of the evidence with regard to Mother," that CYS was attempting "to impeach [common pleas'] finding of fact as to Mother," and that it would "not reweigh the evidence." (Mother's R.R. at 439a.) Again, as with common pleas' 1925(a) opinion, the Superior Court was using a pre-L.Z. interpretation of the presumption, which may have been narrower than the Supreme Court's subsequent interpretation set forth in L.Z.

16

presenting substantial evidence, i.e., a preponderance of the evidence. However, as our Supreme Court explained in L.Z., in enacting Section 6381(d),

> [t]he Legislature . . . *carved out a very limited exception to these more stringent evidentiary standards*, allowing for the possibility of identifying the perpetrator of abuse based on *prima facie* evidence in cases where the abuse is "of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child." 23 Pa.[]C.S. §[]6381(d).

L.Z., 111 A.3d at 1184-85 (first emphasis added). Accordingly, the standard set forth in Section 6381(d) for a *prima facie* case based on the presumption which we apply here is in accordance with L.Z.

In sum, CYS presented "evidence that . . . [C]hild suffered injur[ies] that would not ordinarily be sustained but for the acts or omissions of [Child's] parent[s]" and, therefore, "establish[ed] that [Child's] parent[s] . . . perpetrated that abuse unless the parent . . . rebuts the presumption." L.Z., 111 A.3d at 1185. This satisfies CYS's burden of proof through the use of the presumption. We now turn to whether Mother and Father presented evidence to rebut the presumption that they were the perpetrators of Child's abuse.

> *a. Whether Mother and/or Father rebutted the presumption that they were the perpetrators of Child's serious physical abuse.*

Once established, the presumption set forth in Section 6381(d) may be rebutted by presenting evidence that the child was not in the parent's care when the injuries were suffered or that the parent had no reason to question the parent's decision to leave the child in the other person's care. Id. at 1185-86.

Mother argues that she rebutted the presumption because she was the one who initially reported the injuries to CYS, she repeatedly questioned what was

17

happening with Child, and she sought treatment for Child.  She further argues that common pleas returned Child to Mother's care effective July 1, 2013, that Child has flourished since that date, and CYS has closed its case and is no longer supervising Mother or Child.[13]  Mother's contention and testimony throughout the

---

[13] Whether or not these arguments rebut the presumption, we note that they could be evidence under the new provisions of the CPSL that permit for expungement of an indicated record for good cause shown as set forth in Section 6341(a) of the CPSL.  That section provides, in pertinent part:

> **(a) General rule.--**Notwithstanding section 6338.1 (relating to expunction of information of perpetrator who was under 18 years of age when child abuse was committed):
>
> (1) *At any time, the secretary may amend or expunge any record in the Statewide database under this chapter upon good cause shown and notice to the appropriate subjects of the report*.  The request shall be in writing in a manner prescribed by the department. For purposes of this paragraph, good cause shall include, but is not limited to, the following:
>> . . . .
>> (ii) A determination that the perpetrator in an indicated report of abuse no longer represents a risk of child abuse and that no significant public purpose would be served by the continued listing of the person as a perpetrator in the Statewide database.
>
> (2) Any person named as a perpetrator, and any school employee named, in an indicated report of child abuse may, within 90 days of being notified of the status of the report, request an administrative review by, or appeal and request a hearing before, the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter. The request shall be in writing in a manner prescribed by the department.

23 Pa. C.S. § 6341(a) (emphasis added).  Thus, Section 6341(a) sets forth two ways for challenging a record on the Registry.  The way utilized by Mother and Father here, i.e., seeking administrative review or appealing from the indicated report placing them on the Registry.  23 Pa. C.S. § 6341(a)(2).  Alternatively, an individual can show good cause for the amendment or expungement of the record *at any time* based, *inter alia*, upon a determination that the individual named in the indicated report "no longer represents a risk of child abuse and that no significant

*(Continued…)*

18

dependency hearings were that Father abused Child while he was alone with Child and, therefore, she was not responsible for the abuse. Father argues that he rebutted the presumption because he was not alone with Child, but was always supervised by Mother during his visits, and that Mother was alone with Child the majority of the time. This testimony was an attempt by Mother and Father, respectively, to demonstrate, as required by L.Z., that "Child was not in [his or] her care when the injuries were suffered." Id. at 1186.

We observe that one of the main reasons the Supreme Court held in L.Z. that the mother did not rebut the presumption was because *she did not testify*. L.Z., 111 A.3d at 1167, 1186. Here, Mother's and Father's arguments rely on their testimony at the dependency hearings which set forth their respective versions of the events that resulted in Child's abuse, and these transcripts, along with other evidence, were presented as evidence at the ALJ hearing. Mother and Father acknowledged that they each spent time alone with Child but they also testified that the other parent also was alone with Child at various times during the time

public purpose would be served by the continued listing of the person" on the Registry. 23 Pa. C.S. § 6341(a)(1)(ii). Notably, although the General Assembly provides examples of good cause in the CPSL, good cause is not limited to those examples. 23 Pa. C.S. § 6341(a)(1) (stating "good cause shall include, *but is not limited to*, the following . . . .") (emphasis added). Mother's arguments that common pleas returned Child to Mother's care effective July 1, 2013, that Child has flourished since that date, and that CYS has closed its case and is no longer supervising Mother or Child could demonstrate that she "no longer represents a risk of child abuse and that no significant public purpose would be served by the continued listing of the person" on the Registry. 23 Pa. C.S. § 6341(a)(1)(ii). We note that, in discussing the Superior Court's decision in J.R.W., our Supreme Court in L.Z. observed that the *prima facie* standard was meant to "'provide[] maximum protection for the child victim or other children in the community who might be subject to similar abuse if the alleged abuser was not identified and permitted free access to the victim or other vulnerable children'" thereby "balanc[ing] the needs of society and children for protection against the abuser's possible patterned behavior and his/her right to freedom unless found guilty beyond a reasonable doubt.'" L.Z., 111 A.3d at 1178 (quoting J.R.W., 631 A.2d at 1024).

19

periods in question. For example, Mother agreed that Child slept in her room and that she alone cared for Child in the middle of the night during Father's visits, and Father acknowledged that he was alone with Child when Mother went to the bathroom, made bottles, or took her dog for a walk. (Mother's R.R. at 329a-30a, 344a-45a, 349a, 393a-94a, 398a-99a.) Thus, they each contend that the other abused Child while alone with Child and their own indicated report should be expunged. Accordingly, there is conflicting evidence regarding which parent was caring for Child when Child was abused.

However, the ALJ did not resolve these conflicts to determine whether Child was in Mother's care or Father's care "when the injuries were suffered" or to determine whether "the [other] parent had no reason to question th[at] parent's decision to leave the child in the other [parent's] care."[14] L.Z., 111 A.3d at 1185-86. Rather, the ALJ concluded that Mother and Father did not rebut the presumption because they "have each asserted that the other party must be responsible" and provide "assurance[s] that each of them did not personally commit the physical abuse." (ALJ Adjudication at 10.) But the Supreme Court indicated that an individual could rebut the presumption "potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear." Id. at 1185. In a multiple caregiver situation, when the fact finder is confronted with multiple individuals "testifying that they gave responsibility for the child to another person about whom they had no reason to fear," id., the fact finder will be called upon to weigh the evidence and render a

---

[14] "In expungement proceedings, the Bureau is the ultimate fact finder with authority to make credibility determinations." F.R., 4 A.3d at 781. Here, the Bureau adopted the ALJ's Adjudication without making its own findings of fact or determinations of evidentiary weight. (Bureau Order.)

20

credibility determination, as would be done in any other situation involving a conflict of evidence.

"The evaluation of the validity of the presumption . . . rest[s] with the [fact finder] evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person." Id. We believe that this is particularly important where the presumption is being utilized against multiple individuals and those individuals have attempted to individually rebut the presumption. CYS was able to meet its initial burden of proof using the presumption set forth in Section 6381(d) thereby shifting the burden to Mother and Father to provide rebuttal evidence, which they did. In light of the conflicting rebuttal evidence presented by Mother and Father, the Bureau had to determine whether that evidence offered by Mother and Father rebutted the presumption. Because these issues were not resolved by the fact finder, it is necessary to remand this matter for a new determination. Bucks County Children and Youth Services Agency v. Department of Public Welfare, 616 A.2d 170, 174 (Pa. Cmwlth. 1992).

Accordingly, we vacate the Bureau's Order, and we remand this matter for a new decision that will include credibility determinations and findings of fact.

_____
**RENÉE COHN JUBELIRER,** Judge

21

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

T. H.,                                                :
                          Petitioner                  :     **CASES SEALED**
                                                      :
               v.                                     :     No. 1181 C.D. 2015
                                                      :
Department of Human Services,                         :
                          Respondent                  :
                                                      :
J. R.,                                                :
                          Petitioner                  :
                                                      :
               v.                                     :     No. 1205 C.D. 2015
                                                      :
Department of Human Services,                         :
                          Respondent                  :


## O R D E R


    **NOW**, August 22, 2016, the Order of the Department of Human Services, in the above-captioned matter, is hereby **VACATED**, and this matter is **REMANDED** for a new decision in accordance with the foregoing opinion.

    Jurisdiction relinquished.

_____

**RENÉE COHN JUBELIRER,** Judge