IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick Errickson,                          :
                           Petitioner       :
                                            :
          v.                                :    No. 1237 C.D. 2024
                                            :    Argued:  December 8, 2025
Department of Human Services,               :
                           Respondent       :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge (P.)
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT               FILED:  February 17, 2026

Patrick Errickson (Errickson) petitions for review of an adjudication of the Department of Human Services (Department) that denied his request for an exception from certain Department rules relating to the home and community-based services he receives.  In doing so, the Department affirmed the decision of the Administrative Law Judge (ALJ) that because the challenged rules were established by regulation, the ALJ lacked authority to invalidate or modify them as requested.  On appeal, Errickson argues, *inter alia*, that the rules in question were not lawfully promulgated as regulations and, thus, are null and void.  Upon review, we reverse the Department's adjudication.

**Background**
**I. Medicaid and Waiver Programs**

Medicaid is the nation's primary health insurance program for low-income and high-need Americans.  Enacted in 1965 and set forth at Title XIX of the Social Security Act, *see* 42 U.S.C. §§1396–1396w-6, Medicaid is jointly funded by

the federal and state governments. Participation in Medicaid is optional, but once a state elects to participate, it must comply with Title XIX and its regulations. *See Rehabilitation and Community Providers Association v. Department of Human Services Office of Developmental Programs*, 283 A.3d 260, 262 (Pa. 2022). Medicaid is administered at the federal level by the Centers for Medicare & Medicaid Services ("CMS"), which is part of the United States Department of Health and Human Services. In Pennsylvania, it is administered by the Department and is known as Medical Assistance.

The federal government requires states participating in Medicaid to offer certain mandatory services to Medicaid enrollees. The federal government also authorizes waiver programs, which give states flexibility to operate outside federal rules. Waivers must be approved by CMS. *Rehabilitation and Community Providers Association*, 283 A.3d at 262.

One category of waivers, authorized by Section 1915(c) of the Social Security Act, 42 U.S.C. §1396n, known as Home and Community-Based Services, relates to recipients of long-term care. This waiver permits enrollees to receive care in their home or community rather than in an institutional setting. *Rehabilitation and Community Providers Association*, 283 A.3d at 262-63.

The Department's Office of Developmental Programs is responsible for funding and supervising the provision of services associated with Home and Community-Based Services waivers.

## II. Factual Background

Errickson suffers from several medical conditions including autism, neuro deficiency, and neuro disorder, which cause a developmental disability that requires significant care. Currently 30 years old, he resides with his parents

(Parents), and he receives care through the Home and Community-Based Services waiver program. Parents are direct service providers and have formed a corporation, "Patrick's Progress," which has been approved by Northumberland County Behavioral Health/Intellectual & Developmental Services (County Services) to provide care to Errickson. Parents are employees of Patrick's Progress. Since 2013, Errickson and Parents have spent winter months (October through April) in Florida, where they live in a trailer community.

An individual support plan (Support Plan) has been developed to address Errickson's needs, which has been in effect since 2009. The Support Plan is annually reassessed, updated, and approved by the Northumberland County Administrative Entity (Administrative Entity), an agent of the Department's Office of Developmental Programs. The Support Plan has prescribed Errickson approximately 81 hours of Home and Community-Based Services per week.

In October 2019, Tara Avellino (Avellino), a program specialist for County Services, advised Parents during a home visit that they cannot be compensated for more than 40 hours of care individually or 60 hours of total care per week. In addition, compensation for services rendered to Errickson outside the Commonwealth while they were on vacation was capped at 30 days per year.

Subsequently, the Administrative Entity sent Parents a 10-day notice that the so-called 40/60 rule and the travel rule would be applied to Errickson's benefits. On October 24, 2019, Avellino advised Parents via email, in pertinent part, as follows:

> To be clear, the 40/60 rule is what is leading the charge for the 10 day notice and reduction of service. Currently 81 combined hours of service are authorized. Since there are only 2 family members providing the services therefore the 81 hours are being reduced to a total of 60 hours. We need to have a conversation

3

about how the split between the amount of services regarding the decrease is going to occur.

Reproduced Record at 8a (R.R. __).

On October 24, 2019, Errickson sought an exception to the 40/60 rule and the travel rule so that he could continue to receive the 81 hours of care per week prescribed and spend the winter months in Florida to "be outdoors all year around [sic]." R.R. 4a. By email of November 5, 2019, the Office of Developmental Programs, by Denise Soland, regional program manager, denied Errickson's request for an exception for the stated reason that an exception to the 40/60 rule exists only where there is an emergency or an unplanned departure of a regularly scheduled worker, which Errickson did not prove. Soland explained that the travel rule "has been in effect since July 1, 2009 and is not subject to a variance or exception process." R.R. 10a.

Errickson appealed the rulings of the Office of Developmental Programs to the Department's Bureau of Hearings and Appeals (Bureau of Appeals), which appointed an administrative law judge (ALJ) to conduct a hearing. Errickson's father, Paul Errickson (Father), testified that he believed Patrick's Progress should not be subject to the 40/60 rule or the travel policy because neither of them was enforced prior to 2019. Errickson has significant needs; they reside in a rural area; and it is hard to secure and retain care providers. Errickson is quite large, and potential providers can be intimidated.

Father testified that Errickson is currently approved for 81 hours of services per week. In reality, he requires 24-hour care, which is "in sight supervision at all times." Notes of Testimony at 142 (N.T. __); R.R. 181a. The 40/60 rule and the travel rule cannot cover all of the services provided through Patrick's Progress, and Father cannot retain a non-related individual to provide services. Should

4

Errickson be placed in a group home, he would likely receive 24 hours of care a day, 7 days a week, from 2 staff members. N.T. 147; R.R. 186a. Further, "a more restrictive, less integrated setting" like a group home will not allow the level of socialization Errickson currently has available. N.T. 177; R.R. 216a.

Father testified that since 2013, he and his wife have taken Errickson to Florida from the middle of October to the first week of April. While in Florida, Parents maintain contact with Errickson's service coordinator.

Avellino testified that the 40/60 rule has been in effect, in one form or another, since 2015 or before. The rule is set forth in Section 15 of the Individual Support Plan Manual (Support Plan Manual), which was adopted by the Office of Developmental Programs to provide guidance to service providers, such as Patrick's Progress. The 30-day (now 90-day) travel rule is contained in Section 16 of the Support Plan Manual. These rules are also referenced in Appendix C of the waiver agreement that the Department entered into with the federal government (Waiver Agreement), which authorizes waiver services in the Commonwealth. Avellino testified that the current version of the 40/60 rule took effect in May 2024 and was published by the Department's Office of Developmental Programs (Bulletin No. 00-22-05). Avellino stated that the 40/60 rule does not limit the hours of care that can be provided to a recipient but only the hours for which a relative caregiver can be paid for providing in-home services.

Avellino testified that the travel rule permits a recipient to receive care while travelling. Formerly, the travel policy permitted services for 30 days and only in a contiguous state, such as Maryland and New York. The policy has since been amended to allow for 90 days of services, and they need not be provided while in a contiguous state.

Avellino testified that when provider organizations are approved to provide services, they sign an agreement with the Office of Developmental Programs which requires that they abide by the regulations and the policies of the Department. Providers who fail to abide by the Department regulations and policies can be required to reimburse the Office of Developmental Programs for services improperly rendered for which the provider was paid. Avellino testified that a Support Plan identifies the needs of a service recipient and the services to address those needs, and in this case, a Support Plan was prepared on behalf of Errickson.

A copy of the rules was admitted into evidence. The 40/60 rule is set forth in Bulletin No. 00-22-05, Attachment 1 (Support Plan Manual), which states, in part, as follows:

> *Guidance* Regarding Limits on the Number of Hours of In-Home and Community Support and Companion by Relatives and Legal Guardians
>
> *Any one relative or legal guardian may provide a maximum of 40 hours per week of authorized In-Home and Community Support and/or Companion (when both services are authorized in the [Support Manual]). If a combination of both services occurs, the relative or legal guardian may only render 40 hours total between the two services. Further, when more than one relative or legal guardian provide the service(s), each individual may receive no more than 60 hours per week of authorized In-Home and Community Support, Companion or a combination of In-Home and Community Support and Companion (when both services are authorized in the [Support Manual] from all relatives and legal guardians.*
>
> *An exception may be made to the limitation on the number of hours of In-Home and Community Support and Companion provided by relatives or legal guardians at the discretion of the employer when there is an emergency or an unplanned departure of a regularly scheduled worker for up to 90 calendar days in any fiscal year.*

6

All individuals are required to have a back-up plan to address situations when a paid relative or legal guardian does not report to work. [Office of Developmental Programs] recognizes, however, that there may be extenuating circumstances that cannot be addressed through the plan. In general, these situations include, but are not necessarily limited to:

- Unexpected circumstances such as inclement weather, sudden illness, or the unplanned extension of medical leave, that prevent a regularly scheduled worker from arriving at the job site and where another worker/caregiver is not immediately available to work;

- Situations where a worker unexpectedly quits or is terminated from employment such that relatives and legal guardians must perform paid work in excess of the 40/60 limitation.

- or

- The sudden loss of a caregiver who kept the provision of paid services by relatives and legal guardians at or below 40/60 hours per week.

Bulletin No. 00-22-05, Attachment 1; R.R. 17-18a (emphasis added).

The travel rule in Section 16 of the Support Plan Manual states, in part, as follows:

Temporary travel is defined as a day in which the individual visits another destination that is away from the individual's primary residence or community. A day includes staying away from home for at least one overnight. A day is when the individual is traveling, and waiver services are rendered and reimbursed. Examples of temporary travel could include: an overnight away from home, a full week (7 days) vacation, or other extended time away from the individual's home.

The following services may occur during temporary travel (as defined below):

- In-Home and Community Support
- Residential Habilitation (licensed and unlicensed)
- Life Sharing (licensed and unlicensed)

7

- Supported Living
- Shift Nursing
- Supports Coordination
- Specialized Supplies
- Supports Broker
- Behavioral Support
- Companion
- Respite

These services may be provided anywhere during temporary travel. The only exception is Respite Camp which can only be provided in Pennsylvania, Washington DC, Virginia or a state contiguous to Pennsylvania.

. . . .

The following conditions apply during travel:

- *The provision of waiver services during travel is limited to no more than 90 calendar days per individual's [Support Plan] plan year.*

Bulletin No. 00-22-05, Attachment 1; R.R. 21a (emphasis added).

### Department Adjudication

The ALJ credited Father's and Avellino's testimony. The ALJ found, as fact, that Errickson was approved to receive 81 hours per week of companion services and in-home and community support services, and that such services have been provided by Parents through Patrick's Progress. ALJ Decision at 14. The ALJ found that "[o]n an unspecified date in 2019," Avellino advised Father that the 40/60 rule and the travel policy applied to Patrick's Progress. *Id*.

Reasoning that the Department has the statutory authority to adopt rules and regulations, the ALJ concluded that the Department did not err in denying Dunkelberger's request for an exception to the 40/60 rule and the travel rule. Appendix C of the Waiver Agreement and Section 15 of the Support Plan Manual authorize exceptions only where there is an emergency or an unplanned departure of

8

a regularly scheduled worker. Further, the exception is capped at 90 days in a fiscal year. Father offered no testimony to show an emergency occurred that would allow an exception to the 40/60 rule. The ALJ rejected Father's claim that the rule would adversely affect Errickson's care, reasoning that the rule does not limit the amount of services but only who can be paid for providing such services. ALJ Decision at 15.

As to the 90-day travel rule, Father's testimony indicated that Errickson "spends each winter" between October and April in Florida, which "clearly exceeds that which is permitted by the travel policy." ALJ Decision at 15. Father offered no testimony that Errickson attends or attended a Respite Camp outside the Commonwealth, which is the only exception to the travel rule. *Id*.

The ALJ concluded that he had no authority to change the 40/60 rule or the travel policy, "which is a part of departmental regulations," or to make exceptions to such rules. ALJ Decision at 16. Rather, the 40/60 rule and the travel policy must be strictly followed. *Id*.

By order of August 20, 2024, the Department affirmed the ALJ's decision, making it a final adjudication. Errickson then petitioned for this Court's review of the Department's adjudication.

## Appeal

On appeal,[1] Errickson raises 10 questions for our review, which we consolidate into 4 for clarity.[2] First, Errickson argues that the ALJ (and the Bureau

---

[1] This Court's review determines "whether legal error has been committed, whether constitutional rights have been violated, or whether the necessary findings of fact are supported by substantial evidence." *T.H. v. Department of Human Services*, 145 A.3d 1191, 1196 n.6 (Pa. Cmwlth. 2016).

[2] The 10 questions are:

> 1. Whether the [Office of Developmental Programs] policies, which [the Office of Developmental Programs] adopted unilaterally as "policies" without following

9

of Appeals) erred by treating the 40/60 rule and the travel rule as regulations with the force and effect of law.  To the contrary, these rules were not lawfully promulgated as regulations and, thus, are null and void.  Second, Errickson argues

formal rulemaking procedures, constitute "binding norms" and therefore constitute unenforceable, unpromulgated regulations.

2. [The Bureau of Appeals'] refusal to rule upon [Errickson's] challenge to the [Office of Developmental Programs] Policies as unpromulgated regulations directly contradicts well-established Pennsylvania Law.

3. Whether [the Bureau of Appeals] committed an error of law by concluding that the [Office of Developmental Programs] Policies, which appear nowhere in the Pennsylvania Code, are "a part of departmental regulations."

4. Whether [the Bureau of Appeals] committed an error of law by failing to grant, or even consider, [Errickson's] request for a waiver from applicability of the [Office of Developmental Programs] Policies.

5. Whether the [Office of Developmental Programs] Policies violate (i) [the Department's] own existing regulations governing [Home and Community-Based Services] at 55 Pa. Code Chapter 6100, (ii) state and federal law applicable to the Medicaid Program; and (iii) the government mandates under the Mental Health and Intellectual Disability Act of 1966[, Act of October 20, 1966, Spec. Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §§4101-4704].

6. Whether [Office of Developmental Programs'] rigid application of the [Office of Developmental Programs] Policies to [Errickson's] services without an accommodation constitutes unlawful disability discrimination and violates the *Olmstead* [*v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999),] "integration mandate" and related federal law.

7. Whether[] [the Department] violated applicable law by failing to schedule a hearing on [Errickson's] Fair Hearing Appeal for over four years.

8. Whether [the Bureau of Appeals] committed an error of law, denying [Errickson's] Fair Hearing rights, by failing and refusing to issue subpoenas he requested and repeatedly scheduling his hearing without allowing reasonable time for such subpoenas to be served.

9.  Whether [the Bureau of Appeals] committed additional errors that denied [Errickson] his legally protected right as part of his Fair Hearing Appeal.

10. Whether actions of [the Department], including without limitation [Bureau of Appeals'] decisions as part of the [Bureau of Appeals] Appeal, constituted or included any violations of [Errickson's] rights of due process under the United States or Pennsylvania Constitutions.

Errickson Brief at 3-4.

that assuming the 40/60 rule and the travel rule are valid, the Department erred by not considering his request for an exception to these rules.  Third, Errickson argues that the 40/60 rule and the travel rule violated the Department's duly promulgated regulations on Home and Community-Based Services as well as state and federal law.  Finally, Errickson argues that the hearing did not comply with procedural due process.

The issues presented in this appeal are identical to those raised in *Dunkelberger v. Department of Human Services* (Pa. Cmwlth., No. 1236 C.D. 2024, filed February 17, 2026).  For the reasons set forth in this Court's opinion in *Dunkelberger*, we reverse the Department's August 20, 2024, adjudication.[3]

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[3] As in *Dunkelberger*, counsel for Errickson argues that the ALJ erred in holding that he waived his challenge to the limited service rule because he addressed this issue in his brief filed with the Department.  Unlike in *Dunkelberger*, the parties did not expressly limit the scope of the appeal to the 40/60 rule and the travel rule at the prehearing conference.  However, a review of the record shows that the issue relating to the limited service rule was not raised in Errickson's fair hearing request filed with the Bureau of Appeals or at the hearing.  The ALJ thus properly determined that the issues before him were only the 40/60 rule and the travel rule.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patrick Errickson,               :
           Petitioner       :
                                   :
         v.                     :     No. 1237 C.D. 2024
                                   :
Department of Human Services,    :
           Respondent    :

## **O R D E R**

AND NOW, this 17th day of February, 2026, the adjudication of the Department of Human Services, dated August 20, 2024, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita