# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A. G.,                                    :
                        Petitioner        :        **CASE SEALED**
                                          :
              v.                          :        No. 965 C.D. 2017
                                          :        Argued:  May 7, 2018
Department of Human Services,             :
                        Respondent        :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  June 6, 2018**

A. G. (Mother) petitions for review of the Order of the Department of Human Services (Department), Bureau of Hearings and Appeals (Bureau), denying Mother's appeal from an indicated report identifying her as a perpetrator of child abuse on the ChildLine and Abuse Registry (Registry) under the Child Protective Services Law (CPSL).[1]  The Bureau adopted an Administrative Law Judge's (ALJ) Recommendation, in which the ALJ found that Mother did not rebut, with her testimony, the presumption of abuse in Section 6381(d) of the CPSL, 23 Pa. C.S. § 6381(d).  Mother argues the ALJ's findings are not supported by substantial evidence and that the ALJ erred in applying the presumption.  Because the ALJ issuing the Recommendation did not also preside over the hearings at which the

---

[1] 23 Pa. C.S. §§ 6301-6386.

witnesses testified, and the bases for the ALJ discrediting Mother's testimony are unclear, our ability to perform effective appellate review to determine whether the presumption in Section 6381(d) was properly applied is hampered. Accordingly, we vacate the Department's Order adopting the ALJ's Recommendation and remand for issuance of a new decision clearly setting forth the reasons for crediting/discrediting the evidence and a new order based upon those credibility determinations.

On September 12, 2016, Mother was at home with her son, Ca. D. (Child), who was almost three years old. Child was fine that evening. However, when Mother awoke Child the following morning, she noticed a bump on his head. Mother took Child to his daycare while she went to work. The daycare subsequently called Mother to advise that the Child's bruising had worsened and asked that she pick Child up and take him to a doctor. Mother's sister picked Child up from daycare and met Mother at the hospital.

A physician (Physician) examined Child and observed swelling and bruising on his right cheek, right forehead, and right temple.[2] She observed "very evident" swelling on the right side of Child's face. A CT scan of the head also revealed swelling on the right side of Child's head. Based upon her examination, Physician found:

> The history provided of [Child] likely doing this to himself in frustration is not possible. These injuries are very concerning that this child has been struck. Further, an adult care taker must be aware of how this significant head trauma took place. These injuries are highly concerning for physical abuse.

(ALJ Finding of Fact (FOF) ¶ 24 (quoting Physician's Report, Ex. C-5).)

---

[2] Physician also observed scratches to the base of Child's neck and left cheek, but the parties stipulated that the only injuries at issue were those described above.

The County Children, Youth, and Family Services (CYFS) initiated an investigation. A CYFS intake caseworker (Caseworker) went to the hospital and interviewed Mother and Child. Child offered no insight into the origin of his injuries; instead, he referenced a past car accident, licked Caseworker's shoulder, and looked out a window when Caseworker attempted to interview him.

Mother told Caseworker she and Child were watching television until approximately 10:30 p.m., when Mother put Child to bed. When she woke up the following morning at 5:00 a.m., she noticed a bump on Child's head. Child told Mother he got the bump after falling out of bed.[3] Mother then woke up her paramour D. W. (Paramour),[4] who occasionally spent the night at Mother's residence, to ask whether he checked on Child overnight. Paramour reported he had checked on Child, who was fine.

Caseworker interviewed Paramour by telephone a few days later. Paramour told Caseworker he arrived at Mother's house around 1:00 a.m. on September 13, 2016, and woke Child up to take him to the bathroom. He denied observing any bumps or bruises on Child at that time.

Although Mother and Paramour denied responsibility for Child's injuries, based upon her investigation, Caseworker filed an indicated report of child abuse naming them both as perpetrators.[5] According to the Child Protective Services

---

[3] Mother testified that Child told her that he fell out of **her** bed, although Mother said she placed Child in his own bed.

[4] Paramour is not Child's biological father.

[5] At the time, "indicated report" was defined by the CPSL as "a report of child abuse made pursuant to this chapter if an investigation . . . determines that substantial evidence of the alleged abuse by a perpetrator exists based on . . . (i) [a]vailable medical evidence[;] (ii) [t]he child protective service investigation[; or] (iii) [a]n admission . . . ." 23 Pa. C.S. § 6303(a). The CPSL has been amended a number of times since then, but the definition of "indicated report" remains unchanged.

Investigative Report, commonly called a CY-48, the Caseworker determined there was substantial evidence that Mother and Paramour caused bodily injury to Child as he was in the care of both Mother and Paramour at the time of injury.

On December 14, 2016, Mother appealed requesting expunction of the indicated report.[6,7]  A hearing was held on February 15, 2017, at which Child and Caseworker testified, and on April 19, 2017, at which Physician and Mother testified.  Child was found not competent and his testimony was ultimately disregarded.  Caseworker testified consistent with her report, as did Physician.  Mother's testimony was also consistent with what she previously told Caseworker.  Mother did not contend that Child was injured accidentally, either from a fall from a bed or otherwise.  Instead, Mother testified that she believed Paramour, with whom she broke up following Child's removal from her home, was the perpetrator, although he was never physically abusive towards Child or her in the past.  Importantly, Mother stipulated that Child was injured while in her care but denied causing his injuries.

---

The term "child abuse" has been broadened by recent amendments, but the provision pertinent to this appeal remains unchanged:  "child abuse" was and still is defined, *inter alia*, as "intentionally, knowingly or recklessly . . . [c]ausing bodily injury to a child through any recent act or failure to act."  23 Pa. C.S. § 6303(b.1)(1).

The term "perpetrator" has likewise been expanded, but at the time of the abuse and now, the term was defined as "[a] person who has committed child abuse as defined in this section" and included a parent or a paramour or former paramour of a child's parent.  23 Pa. C.S. § 6303(a).

[6] On the same date, Child was adjudicated dependent by the Court of Common Pleas.  At the time of the ALJ hearing, Child had been returned to Mother's care but the dependency case remained open.

[7] Paramour also appealed but did not properly perfect the appeal, resulting in its dismissal by the Bureau.  Paramour did not testify at Mother's hearing.

4

Following the hearings, the matter was reassigned to a different ALJ to issue a recommendation.[8] The new ALJ reviewed the transcripts and exhibits before issuing her decision. Based upon Mother's stipulation that Child was a victim of child abuse on September 12-13, 2016, the ALJ found there was prima facie evidence of abuse, based on the presumption found in Section 6381(d) of the CPSL.[9] (Adjudication at 12.) The ALJ further found that Mother failed to rebut the presumption that she committed the abuse. (*Id.* at 13.) In doing so, the ALJ found Mother did not credibly testify. (ALJ FOF ¶ 49.) Specifically, the ALJ found "[o]ther than her testimony, [Mother] presented no other evidence to rebut the presumption that she committed the abuse. [Mother]'s denials, although consistent, are self-serving and are not corroborated by any other evidence in the record." (Adjudication at 13.) The ALJ further stated that as the parent, Mother is "always responsible" for Child and never testified that she gave responsibility for care of Child to anyone else. (*Id.*) To the extent Mother was now "point[ing] the finger" at Paramour, the ALJ stated Mother testified Paramour was never physical with her or Child, even when they broke up. (*Id.*) The ALJ noted that Mother never indicated that Paramour may have been responsible when she spoke to Caseworker or

---

[8] At oral argument, it was indicated that the original ALJ who presided over the hearings retired, resulting in the reassignment.

[9] Section 6381(d) provides:

> **Prima facie evidence of abuse.**--Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be **prima facie evidence of child abuse by the parent** or other person responsible for the welfare of the child.

23 Pa. C.S. § 6381(d) (emphasis added).

Physician; it was "[o]nly after she was indicated as a perpetrator of abuse [that] she offer[ed] this as an explanation." (*Id.*)  In addition, the ALJ found it was:

> not reasonable that [Mother] would have waited until **after** [Child] **was removed from her care** to break up with [Paramour] if she truly thought he was the one who abused [Child].  It is also not reasonable that [Child] would have been the victim of child abuse, sustaining an injury causing substantial pain, without [Mother] waking up. [Mother's] testimony is not credible and is not sufficient to rebut the presumption that she abused her son.

(*Id.* (emphasis in original).)

Satisfied that CYFS met its burden and Mother did not rebut the presumption of abuse, the ALJ recommended Mother's appeal be denied.  By Order dated June 19, 2017, the Bureau adopted the ALJ's recommendation in its entirety.

Mother now petitions this Court for review,[10] arguing "the ALJ misapprehended the way the presumption [in Section 6381] is rebutted." (Mother's Brief (Br.) at 11.)  Mother claims "the ALJ made an unreasonable finding about credibility of [Mother's] rebuttal of the prima facie evidence of abuse[,] which created a fundamentally unfair shifting of the burden." (*Id.* at 14.)  She questions what other evidence she could have presented, aside from her own testimony, to rebut the presumption of abuse, particularly since Child was deemed incompetent to testify due to his age.  She argues "[i]f an ALJ can disregard the word of an appellant simply because they [sic] are not there for entirely altruistic motives[,] then the right to rebuttal might as well not exist." (*Id.* at 16-17.)  Mother cites the Pennsylvania Supreme Court's decision in *In re L.Z.*, 111 A.3d 1164 (Pa. 2015), for support that

---

[10] "This Court's review is limited to determining whether legal error has been committed, whether constitutional rights have been violated, or whether the necessary findings of fact are supported by substantial evidence." *F.R. v. Dep't of Pub. Welfare*, 4 A.3d 779, 782 n.7 (Pa. Cmwlth. 2010).

a parent's testimony can be used to rebut the presumption so long as the parent shows he or she "gave responsibility for the child to another person about whom they [sic] had no reason to fear." (Mother's Br. at 17 (quoting *L.Z.*, 111 A.3d at 1185).) Here, Mother contends, the evidence shows she gave responsibility to Paramour to care for Child and she had no reason to fear him. Mother takes issue with the ALJ's findings related to her breakup with Paramour and whether she should have awakened to hear Child in pain. Mother argues the ALJ is "making a credibility determination not on the testimony of [Mother], which this ALJ never heard, but rather on baseless inferences." (*Id.* at 18.) Mother argues the record is devoid of any evidence to support these findings.

Intervenor CYFS[11] acknowledges it cannot positively identify whether Mother or Paramour was responsible for Child's injuries but argues it was entitled to the presumption under Section 6381(d) because only Mother and Paramour were at home when Child was injured and Mother stipulated Child was a victim of child abuse. It further argues the ALJ, as fact-finder, was the judge of credibility and was entitled to find Mother not credible. With no other evidence to rebut the presumption, the ALJ was correct to dismiss the appeal.

At the heart of this case is the so-called presumption found in Section 6381(d) of the CPSL. Section 6381(d) provides:

> **Prima facie evidence of abuse.**--Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be **prima facie evidence of child abuse by the parent** or other person responsible for the welfare of the child.

---

[11] The Department did not participate in this appeal.

23 Pa. C.S. § 6381(d) (emphasis added).

In *In re L.Z.*, the Pennsylvania Supreme Court addressed the history of the evolving interpretations of this presumption in cases involving multiple caretakers that were previously decided by both this Court and the Superior Court. The Supreme Court held that the presumption in Section 6381(d) was not limited to cases where the abused child was in the parent's physical care at the time of injury because "parents are always responsible for their children." *L.Z.*, 111 A.3d at 1183-84. The Supreme Court explained that the Legislature, with Section 6381(d), "carved out a very limited exception," which allows for identification of the perpetrator "based on prima facie evidence in cases where the abuse is 'of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child.'" *Id.* at 1184-85 (quoting 23 Pa. C.S. § 6381(d)). The Supreme Court explained the importance of the presumption:

> [C]hild abuse cases often involve a child presenting to a hospital with significant injuries that are entirely consistent with common types of child abuse and entirely inconsistent with the implausible explanations concocted by the parents and responsible persons to avoid allegations of child abuse. As noted, in cases where multiple caregivers are involved, the individuals frequently "circle the wagons" or alternatively point fingers at each other. As the children may be too young or fearful to describe the abuse, CYS agencies are left to prove their case with only the physical evidence of injuries that would not ordinarily be sustained but for the action of the parents or responsible persons and the implausible statements of the parents and responsible persons. Thus, while they can prove the existence of abuse rather easily, they have no ability to assign responsibility for the heinous act among the responsible adults. As Judge Tamilia observed in 1993, "the Legislature deemed it wise and necessary to establish a different evidentiary standard" by enacting Section 6381(d)'s presumption to avoid this evidentiary conundrum and protect children from future abuse. [*In re*] *J.R.W.*, 631 A.2d [1019], 1023 [(Pa. Super. 1993)]. We

8

emphasize that, when a child is in the care of multiple parents or other persons responsible for care, those individuals are accountable for the care and protection of the child whether they actually inflicted the injury or failed in their duty to protect the child.

*Id.* at 1185.

The Supreme Court explained Section 6381(d) merely serves as prima facie evidence of abuse and can be rebutted. *Id.* The Supreme Court stated alleged perpetrators "may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive." *Id.* (footnote omitted). Importantly, the Supreme Court stated that "[t]he evaluation of the validity of the presumption would then rest with the [fact-finder] **evaluating the credibility of the prima facie evidence presented by the CYS agency and the rebuttal of the parent or responsible person.**" *Id.* (emphasis added). The fact-finder is the judge of credibility when there is a conflict in evidence. *T.H. v. Dep't of Human Servs.*, 145 A.3d 1191, 1203-04 (Pa. Cmwlth. 2016).

Here, the ALJ properly applied the presumption based upon Mother's stipulation that child abuse occurred and that Mother and Paramour were the only individuals home with Child at the relevant time. In an effort to rebut that presumption, Mother testified that she was not responsible for the abuse and that Paramour must have caused Child's injuries. The ALJ rejected Mother's testimony as not credible, but the ALJ's reasons for rejecting Mother's testimony are not clear. In the ALJ's Recommendation, the ALJ, on more than one occasion, calls Mother's testimony "self-serving" and "uncorroborated." (Adjudication at 13.) However, all testimony in some form is "self-serving." Even a disinterested witness has an

9

interest in having his or her testimony believed. *See A.P. v. Dep't of Pub. Welfare*, 98 A.3d 736, 744-45 (Pa. Cmwlth. 2014) (vacating and remanding an adjudication where an ALJ applied a double-standard in finding only one side's witnesses were biased, stating "a conclusory credibility determination does not suffice.").

The ALJ appears to proffer other explanations for the credibility determination, such as Mother's failure to identify Paramour as a possible perpetrator earlier, the timing of her breakup with Paramour, and Mother not waking up when Child was injured. However, the ALJ's finding that Mother should have awakened when Child was injured is not supported by substantial evidence. There is no evidence of record related to how big the residence is, where Mother and Child were located in relation to one another, whether Child would have cried out, or whether Mother is a light or heavy sleeper. Thus, this explanation for discrediting Mother's testimony must be disregarded. It is not clear what weight the ALJ gave this reason, as compared to the other two reasons for discrediting Mother's testimony. Nor is it clear from the Recommendation to what extent the ALJ's credibility determination was based upon Mother's so called "self-serving" and "uncorroborated" testimony.

The importance of the ALJ's credibility determination in this type of case cannot be overstated. Because the presumption imposes responsibility for the abuse on the parent based on relationship and duty, when there is a lack of any other evidence of the perpetrator, often, as here, the **only** evidence an alleged perpetrator will have to introduce to rebut the presumption in this type of case is his or her own uncorroborated testimony. If an ALJ can outright find that testimony incredible because it is self-serving, then the presumption becomes irrebuttable, which is contrary to *L.Z.*

10

An ALJ must offer more than "conclusory" statements of credibility, *A.P.*, 98 A.3d at 744-45, to explain his or her credibility determinations, especially in cases where the ALJ did not preside over the hearings and have the benefit of observing the witness's demeanor or body language during his or her testimony, such as here. We do not mean to suggest that all child abuse expunction proceedings require the ALJ who presided over the hearing to also issue the recommendation to the Department. We are cognizant that fact-finders for administrative agencies must sometimes determine witness credibility based upon reading a transcript. *Hammad v. Bureau of Prof'l & Occupational Affairs, State Bd. of Veterinary Med.*, 124 A.3d 374, 381 n.11 (Pa. Cmwlth. 2015); *Fisler v. State Sys. of Higher Educ.*, 78 A.3d 30, 41 (Pa. Cmwlth. 2013); *Caldwell v. Clearfield Cty. Children & Youth Servs.*, 476 A.2d 996, 998 (Pa. Cmwlth. 1984). However, our Supreme Court has noted a distinction between credibility determinations based on viewing live testimony and those based upon a review of the record. When the credibility determination is based on live testimony,

> it is appropriate for the judge to base his or her determination upon the demeanor of the witnesses. In such an instance, there often is not much to say, nor is there a need to say much, in order for a reviewing body to determine that the decision was reasoned. Such a credibility determination may involve nothing more than the fact-finder's on-the-spot, and oftentimes instinctive, determination that one witness is more credible than another. The basis for the conclusion that certain testimony has the "ring of truth," while other testimony does not, may be difficult or impossible to articulate—but that does not make such judgments invalid or unworthy of deference. To the contrary, people routinely undertake affairs of consequence based upon their judgment of the credibility and reliability of others, or their assessment of the mettle and character of the persons with whom they are dealing. Accordingly, in a case where the fact-finder has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere

conclusion as to which witness was deemed credible, in the absence of some special circumstance, could be sufficient to render the decision adequately "reasoned."

*Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052-53 (Pa. 2003) (internal citation omitted).

On the other hand, if the fact-finder's credibility determinations are based upon a review of the record,

> [s]ince the [fact-finder] did not observe the respective demeanors of the experts, her resolution of the conflicting evidence cannot be supported by a mere announcement that she deemed one [witness] more "credible and persuasive" than another.  This is not to say that the [fact-finder] must actually observe competing witnesses on the stand in order to assess their relative credibility.  To the contrary, as the cases that we have canvassed . . . demonstrate, there are countless objective factors which may support the decision to accept certain evidence while "rejecting or discrediting competent [conflicting] evidence." . . . The point is that, absent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, some articulation of the **actual objective basis** for the credibility determination must be offered for the decision to be a "reasoned" one which facilitates effective appellate review.

*Id.* at 1053 (footnote and internal citation omitted) (emphasis added).

While *Daniels* is a workers' compensation case, governed by a statute that expressly requires a reasoned decision, our courts have looked to it for guidance in other types of proceedings.  *See, e.g.*, *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 531 n.7 (Pa. 2005) (describing the need for objective evaluation of a witness's testimony when the trial judge in a forfeiture proceeding did not hear live witnesses, which would enable him to make demeanor-based credibility determinations); *Spencer v. City of Reading Charter Bd.*, 97 A.3d 834, 842 n.8 (Pa. Cmwlth. 2014) (noting that a fact-finder in a local agency proceeding

must explain the reasoning for his credibility determination if he did not observe the witness testify).  We discern no reason it should not be applicable in a case involving serious allegations of child abuse.

Moreover, due process "require[s] that the fact[-]finder's decision be . . . explained 'in sufficient detail to permit meaningful appellate review.'" *Fisler*, 78 A.3d at 41 (quoting *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1389 (Pa. 1985)).  Without an adequate explanation, the Court's ability to engage in appellate review is hindered.

Here, the ALJ did not find Mother credible.  Because the ALJ who issued the Recommendation was different than the ALJ who presided over the hearing and heard Mother's live testimony, the ALJ needed to proffer objective reasons for discrediting Mother.  The Recommendation leaves open the door that the ALJ did not credit Mother's testimony because it was self-serving and uncorroborated.  As we explained above, this would render the presumption in the CPSL irrebuttable, which is contrary to *L.Z.* and notions of due process.  Accordingly, we vacate the Department's Order and remand the matter for a new credibility determination.  In particular, on remand, the ALJ should determine what, if any, impact the lack of corroborating evidence had on the ALJ's credibility determination and should set forth in greater detail all of her reasons for discrediting Mother's testimony.

_____

**RENÉE COHN JUBELIRER,** Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A. G.,                                    :
               Petitioner     :    **CASE SEALED**
                                    :
         v.                        :    No. 965 C.D. 2017
                                      :
Department of Human Services,             :
               Respondent    :

## O R D E R

     **NOW**, June 6, 2018, the Order of the Department of Human Services dated June 19, 2017, in the above-captioned matter is **VACATED,** and the matter is **REMANDED** for further proceedings consistent with the foregoing opinion.

     Jurisdiction relinquished.


                                      _____
                                      **RENÉE COHN JUBELIRER,** Judge