v.

**DEPARTMENT OF PUBLIC WELFARE, LACKAWANNA COUNTY OFFICE, CHILDREN, YOUTH & FAMILY SERVICES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 19, 1996.

Decided Aug. 15, 1996.

Paul Philip Ackourey, for Petitioner.

Carol Ulichney, Assistant Counsel, for Respondent.

Before SMITH and FRIEDMAN, JJ., and LORD, Senior Judge.

SMITH, Judge.

S.T. petitions for review of a final order of the Office of Hearings and Appeals, Department of Public Welfare (DPW), that adopted in its entirety the recommendation of an attorney examiner denying S.T.'s appeal and determining that an indicated report of child abuse, listing S.T. as the perpetrator, should not be expunged. The issues presented for review are whether DPW's order is supported by substantial evidence, where the identification of S.T. as the perpetrator allegedly was based upon uncorroborated hearsay; whether there is substantial evidence to support the finding that the victim suffered a "serious injury" within the meaning of Section 6303 of the Child Protective Services

Law, 23 Pa.C.S. § 6303,[1] where the child suffered no severe pain or permanent residual effects and was able to engage in his normal activities; and whether S.T.'s due process rights under the United States and Pennsylvania Constitutions were violated.

DPW's attorney examiner made the following findings of fact. The subject child is J.K., who was four years old on January 11, 1993, the date of the alleged child abuse. On that date, J.K. was in the physical custody of S.T., who was acting as a day care proprietor in her home. J.K. arrived at S.T.'s home before 7:30 a.m. in apparently good condition. S.T., in response to an alleged complaint by J.K., checked his left ear but found nothing wrong with it. J.K.'s mother, D.K., picked up J.K. at 2:00 p.m. that afternoon and noticed that his face was red but assumed it was from sleeping on that side of his face. At the time of pick up, S.T. told D.K. that J.K.'s ear was bothering him.

Upon reaching home at approximately 2:30 p.m., D.K. examined J.K.'s ear and noticed that it was starting to turn purple. J.K. stated that S.T. hit him because he hit Benji, S.T.'s dog. Shortly thereafter, J.K. told John K., his brother, that S.T. hit him because he hit her dog. At approximately 4:00 p.m., D.K. contacted a pediatric physician, who examined J.K. at approximately 6:30 p.m. The following day, Ms. Emily Davis–Palermo, a caseworker for the Lackawanna County Children and Youth Services (CYS), examined J.K. and noticed that his face was reddened and his upper left ear appeared to be bruised. Ms. Davis–Palermo took photographs of the injuries, which were entered into evidence as CYS Exhibit #1. Ms. Davis–Palermo asked J.K. what happened, and he responded that S.T. hit him after he hit S.T.'s dog.

The attorney examiner found that the injury met the criteria for physical child abuse in that the child received a serious injury causing severe pain, which lasted for about two weeks, and that the child received treatment from a pediatric physician. On February 5, 1993, based on Ms. Davis–Palermo's investigation, DPW filed an indicated report of physical child abuse against S.T.

■ Following an administrative hearing on S.T.'s child abuse expungement appeal at which both parties presented evidence, the attorney examiner determined, in light of all the circumstances, that J.K.'s injury occurred while he was in the custody of S.T. and that S.T. caused the injury. The attorney examiner found that J.K.'s statements that S.T. hit him because he hit her dog, which were made to his mother, his brother and Ms. Davis–Palermo, were consistent. The attorney examiner further noted that while these statements could be considered hearsay, they were corroborated by other evidence of record, which indicated that J.K. sustained his injury while in S.T.'s custody. The attorney examiner recommended that the indicated report of child abuse not be expunged. The Office of Hearings and Appeals adopted the recommendation in its entirety, and S.T. petitions this Court for review.[2]

■ S.T. contends that DPW failed to present sufficient evidence to identify S.T. as the perpetrator. Specifically, S.T. contends that the only evidence linking her to the victim was J.K.'s hearsay statements that she hit him. S.T. argues that this hearsay is uncorroborated by any other evidence of record and that, under the evidentiary standards to be applied in expungement cases as set forth by the Supreme Court in *A.Y. v. Department of Public Welfare, Allegheny County Children & Youth Services*, 537 Pa. 116, 641 A.2d 1148 (1994), it is insufficient to

1. At the time of the incident in the case sub judice, Section 6303 defined "child abuse" as "[s]erious physical or mental injury which is not explained by the available medical history as being accidental ... of a child under 18 years of age...." Section 6303 has been amended, effective July 1, 1995, and now defines "child abuse," inter alia, as "[a]ny recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age." 23 Pa.C.S. § 6303.

2. On appeal from a final administrative order, this Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether legal error has been committed or whether constitutional rights have been violated. *B.E. re G.M. Jr., v. Department of Public Welfare*, 654 A.2d 290 (Pa.Cmwlth.1995).

uphold the denial of an expungement request.

In *A.Y.* the Supreme Court enunciated guidelines for the admission of hearsay testimony in child abuse expungement cases. The Court stated that "[h]earsay testimony in conjunction with admissible corroborative evidence of the act(s) in question can *in toto* constitute substantial evidence which will satisfy the Agency's burden to justify a conclusion of abuse." *Id.* at 126, 641 A.2d at 1153. Accordingly, this Court must determine whether J.K.'s statements that S.T. hit him were sufficiently corroborated by the evidence.

■ In *Bedford County Children and Youth Services v. Department of Public Welfare,* 149 Pa.Cmwlth. 127, 613 A.2d 48 (1992), the Court stated that "[i]n the context of child abuse expungement proceedings, 'substantial evidence' is defined as evidence which 'so preponderates in favor of a conclusion that it outweighs, in the mind of the fact finder, any inconsistent evidence and reasonable inferences drawn therefrom.'" *Id.,* 149 Pa.Cmwlth. at 129, 613 A.2d at 50. Further, in determining whether a finding of fact is supported by substantial evidence, the Court must give the party in whose favor the decision was rendered the benefit of all reasonable and logical inferences that may be drawn from the evidence of record; the weight and credibility to be accorded to the evidence is solely within the province of the attorney examiner as fact finder. *Id.*

This Court in *B.E. Re G.M. Jr. v. Department of Public Welfare,* 654 A.2d 290 (Pa. Cmwlth.1995), followed the guidelines set forth in *A.Y.* for determining when corroborated hearsay may be considered substantial evidence. In that case the Court found that medical records corroborated the caseworker's testimony regarding the contents of her report. In the present case, J.K.'s hearsay statements to his mother, brother and Ms. Davis–Palermo were corroborated by testimony presented by J.K.'s mother, brother and Ms. Davis–Palermo along with the medical evidence.

In summary, the evidence indicates that J.K.'s left ear was uninjured when he was placed in S.T.'s care. S.T. admits that she stopped J.K. from hitting Benji, her dog. When J.K.'s mother and brother picked him up, bruising to his face and ear had begun to develop. The only adults who had contact with J.K. between 7:30 a.m. and 2:00 p.m. are S.T. and J.K.'s mother. This Court concludes that the evidence, when viewed in its entirety, preponderates in favor of a conclusion that S.T. is the individual who caused J.K.'s injuries. DPW's finding that S.T. caused J.K's injuries is therefore supported by substantial evidence.

■ S.T. further contends that the evidence presented by DPW failed to establish that J.K. suffered a "serious physical injury" within the meaning of Section 6303 of the Child Protective Services Law. Serious physical injury is defined in DPW's regulations as an injury that does one of the following:

(i) Causes the child severe pain.

(ii) Significantly impairs the child's physical functioning, either temporarily or permanently.

(iii) Is accompanied by physical evidence of a continuous pattern of separate, unexplained injuries to the child.

55 Pa.Code § 3490.4. S.T. asserts that because there was no issue in this case regarding any impairment of J.K.'s physical functioning, DPW was obligated to establish by substantial evidence that J.K. suffered an injury that resulted in severe pain. S.T. argues that because neither J.K. nor his doctor testified regarding any pain, DPW has failed to sustain its burden of proof.

A review of the record demonstrates that both J.K.'s mother and Ms. Davis–Palermo testified that J.K. winced when the bruised area was touched. J.K.'s mother also testified that J.K. would scream when she attempted to apply a cold compress or ice to the bruised area. This evidence is sufficient to establish that J.K. suffered an injury that resulted in severe pain. Furthermore, in *D.N. v. Department of Public Welfare,* 127 Pa.Cmwlth. 580, 562 A.2d 433 (1989), the Court held that regardless of the absence of

testimony from either the victim or a medical witness, photographs depicting injuries may provide substantial evidence to support a finding that the child suffered severe pain. The photographs of J.K.'s injuries clearly depict bruises to the left side of his face and his left ear.

 S.T. further contends that her procedural due process rights under the United States and Pennsylvania Constitutions were violated where: (a) she was precluded from either confronting or cross-examining J.K., her principal accuser;[3] (b) an indicated report of child abuse was filed without a hearing and that filing resulted in the automatic revocation of her registration certificate to operate a day care home, impugned her reputation and adversely affected her ability to secure employment within the teaching profession; and (c) the burden of proof imposed on DPW at the hearing required a showing of only "substantial evidence," which arguably may be somewhat less than a preponderance of the evidence.[4]

 S.T. failed to raise these issues either during the agency proceeding or in her petition for review before this Court. Issues not raised in an agency proceeding are waived and cannot be considered for the first time in a judicial appeal. *Newsome v. Pennsylvania Board of Probation and Parole*, 123 Pa. Cmwlth. 413, 553 A.2d 1050 (1989). In her petition for review, paragraph four, S.T. states that DPW's order is not supported by "substantial, competent evidence" because:

 a. The hearing officer failed to adequately consider the inconsistencies in the statements of the alleged abused child, J.K.;

 b. The hearing officer failed to adequately consider evidence indicating that J.K. had physical evidence of abuse prior to being placed in the custody of S.T.;

 c. The hearing officer improperly relied on hearsay evidence of the alleged abused minor child;

Pursuant to Pa.R.A.P. 1513(a), a petition for review shall contain, inter alia, a general statement of objections to the order sought to be reviewed, which includes subsidiary questions fairly comprised in the main issues. The constitutional issues raised by S.T. for the first time in her appellate brief to this Court cannot be considered subsidiary questions of S.T.'s main contention that DPW's order is not supported by substantial evidence. Accordingly, S.T.'s constitutional claims must be considered waived. *See Standard Fire Ins. Co. v. Insurance Department*, 148 Pa.Cmwlth. 350, 611 A.2d 356 (1992). The final order of the Office of Hearings and Appeals is affirmed.

## ORDER

AND NOW, this 15th day of August, 1996, the final order of Department of Public Welfare, Office of Hearings and Appeals, entered at Docket Number 21–94–220, is hereby affirmed.

---

**3.** In *A.Y.* the Supreme Court, in establishing guidelines regarding the admissibility of hearsay evidence in child abuse expungement cases, considered these same due process concerns.

**4.** As previously discussed, "substantial evidence" in child abuse expungement cases is defined as evidence that not only preponderates in favor of a conclusion but outweighs any inconsistent evidence. *Bedford County Children and Youth Services.* In other words, "substantial evidence" in child abuse expungement cases is synonymous with the "preponderance of the evidence" standard.