IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G.V., : 
            Petitioner : 
                  : 
     v. : 
                  : 
Department of Public Welfare, :   No. 125 C.D. 2011
            Respondent :   Submitted: February 20, 2015


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
JUDGE COVEY                 FILED: December 17, 2015


       This case, on remand from the Supreme Court, involves a challenge to the Department of Public Welfare (DPW),[1] Bureau of Hearings and Appeals' (BHA) December 29, 2010 order adopting the Administrative Law Judge's (ALJ) recommendation denying G.V.'s appeal. Our Supreme Court held that the substantial evidence standard of proof must be met in order to maintain an indicated report of child abuse on the ChildLine & Abuse Registry (ChildLine Registry) under the Child Protective Services Law (Law),[2] and remanded to this Court for review using that standard. *G.V. v. Dep't of Pub. Welfare*, 91 A.3d 667 (Pa. 2014) (*G.V. II*). Upon review, we now affirm.

---

      [1] Effective November 24, 2014, DPW was officially renamed the Department of Human Services. However, because this appeal was filed before the official name change, we will refer to Respondent as DPW herein.

      [2] 23 Pa.C.S. §§ 6301-6386.

## Background

On September 9, 2009, Lancaster County Children and Youth Services (CYS) received a referral alleging that G.V. was sexually abusing his 16-year-old great niece, C.S., of whom G.V. and his wife, T.V., had custody. CYS conducted an investigation and, on November 5, 2009, it filed an indicated report against G.V. as a perpetrator of sexual child abuse against C.S. CYS filed the report with the ChildLine Registry on the same day. By notice mailed November 16, 2009, G.V. was informed that he was listed on the ChildLine Registry as a perpetrator of child abuse. On December 23, 2009, G.V. requested a hearing because he disagreed with the indicated report. A hearing was held on June 2, 2010 before the ALJ, at which several witnesses, including C.S. and G.V., testified. On December 17, 2010, the ALJ issued a recommendation that BHA deny G.V.'s child abuse expungement appeal. BHA adopted the ALJ's recommendation in its entirety. G.V.'s request for DPW's Secretary's reconsideration was denied. G.V. appealed to this Court[3]. The issue before the Court is whether there was substantial evidence to support BHA sustaining the report of child abuse[4].

Herein, BHA adopted the ALJ's conclusion:

[G.V.] sexually abused C.S. Child abuse occurs when there has been a sexual abuse or sexual exploitation of a child under 18 years of age[.] 55 Pa. Code § 3490.4. Per 23

---

[3] CYS intervened.

"Our 'scope of review in expunction proceedings is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence.'" *K.R. v. Dep't of Pub. Welfare,* 950 A.2d 1069, 1073 n.6 (Pa. Cmwlth. 2008) (quoting *E.D. v. Dep't of Pub. Welfare*, 719 A.2d 384, 387 (Pa. Cmwlth. 1998)).

[4] This Court has stated that "'substantial evidence' in child abuse expungement cases . . . is synonymous with the 'preponderance of the evidence' standard." *S.T. v. Dep't of Pub. Welfare, Lackawanna Cnty. Office, Children, Youth & Family Servs.*, 681 A.2d 853, 857 n.4 (Pa. Cmwlth. 1996).

2

Pa.C.S.[] § 6303(i)(C), sexual abuse or exploitation to a child by a perpetrator occurs, as applicable in this matter, when there has been an indecent assault as defined by [Section] 3126(a) [of the Crimes Code]. I find [G.V.]'s actions were motivated for his and/or C.S.' sexual gratification because there was no health reason offered to justify the touching and the touching was directed at the child's breasts, buttocks, and genitals. [G.V.] fondling C.S.' breasts and exposing and massaging her buttocks constituted sexual assault. 18 Pa.C.S.[] §§ 3101(a), 3126(a)(4) & (7). [G.V.] looking at C.S[.]' naked buttocks was done for his own sexual gratification. 55 Pa. Code § 3490.4. Each of these acts sufficed to classify [G.V.] as a perpetrator of child abuse in the [Law] and [DPW's] regulations. 23 Pa.C.S.[] § 6303; 55 Pa. Code § 3490.4.

Reproduced Record (R.R.) at 35a.

At the time of the offense, the Law defined "child abuse," in relevant part, as "[a]n act . . . by a perpetrator which causes . . . sexual abuse or sexual exploitation of a child under 18 years of age." 23 Pa.C.S. § 6303(b)(1)(ii).[5] "Sexual abuse or exploitation" was defined in DPW's Regulations as, *inter alia*:

> (i) Any of the following if committed on a child by a perpetrator:
>
> (A) The employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another person to engage in sexually explicit conduct.
>
> . . . .
>
> (C) Any of the following offenses as defined by the crimes code:
>
> . . . .

---

[5] Section 1 of the Act of December 18, 2013, P.L. 1170 amended the definition of "child abuse," effective December 31, 2014. *See* 23 Pa.C.S. § 6303(b.1).

(6) Indecent assault as defined by [S]ection 3126 [of Pennsylvania's Crimes Code (Crimes Code)] (relating to indecent assault).

. . . .

(D) Exploitation which includes any of the following:

(1) Looking at the sexual or other intimate parts of a child for the purpose of arousing or gratifying sexual desire in either person.

55 Pa. Code § 3490.4.[6] Section 3126(a) of the Crimes Code states, in relevant part:

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person . . . for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's consent; [or]

. . . .

(4) the complainant is unconscious or the person knows that the complainant is unaware that the indecent contact is occurring[.]

18 Pa.C.S. § 3126(a). "Indecent contact" is defined by Section 3101 of the Crimes Code as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S. § 3101.[7]

An indicated report of child abuse is defined as a report issued by DPW if it "determines that substantial evidence of the alleged abuse exists based on any of the following: (1) [a]vailable medical evidence[;] (2) [t]he child protective service investigation[; or,] (3) [a]n admission of the acts of abuse by the perpetrator." 23

---

[6] Although DPW's regulatory definition did not change, Section 1 of the Act of December 18, 2013, P.L. 1170, amended the definition of "sexual abuse or exploitation," effective December 31, 2014. *See* 23 Pa.C.S. § 6303(a).

[7] Section 3101 of the Crimes Code amended the definition of "indecent contact" effective January 1, 2014. *See* 18 Pa.C.S. § 3101.

4

Pa.C.S. § 6303(a);[8] 55 Pa. Code § 3490.4. Substantial evidence is defined in the Law as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303(a). "[CYS] has the burden of establishing by substantial evidence that an indicated report of child abuse is accurate. If CYS fails to sustain that burden, a request for expungement will be granted." *Bucks Cnty. Children & Youth Soc. Servs. Agency v. Dep't of Pub. Welfare*, 808 A.2d 990, 993 (Pa. Cmwlth. 2002).

## Merits

G.V. argues that the evidence relied upon by the ALJ to find that the indicated report was properly maintained does not, by itself, constitute substantial evidence to support the finding. G.V. asserts that C.S.'s testimony was inconsistent and did not outweigh the evidence G.V. submitted. G.V. also argues that BHA committed an error of law in its interpretation of "sexual abuse or exploitation," as defined by Section 6303(a) of the Law.

The testimony before the ALJ revealed that, between 2003 and 2009, C.S. spent time living with her mother (T.D.), her father, and her mother's aunt (T.V.) and G.V. (T.V.'s husband), with the majority of her time spent living with G.V. and T.V. G.V. regularly gave backrubs to C.S. and his daughters, M.H. and B.V. M.H. moved out of G.V. and T.V.'s home in 2004. In September 2007, C.S. was placed permanently with G.V. and T.V. by court order. As of 2009, when C.S. was 16 years old, G.V. and T.V.'s household consisted of G.V., T.V., C.S. and B.V., but B.V. frequently spent evenings and nights with her boyfriend rather than at her parents' home.

---

[8] Although the definition of an indicated report was also amended by Section 1 of the Act of December 18, 2013, P.L. 1170, the relevant portion of the definition was not changed.

5

From February 2009 to May 2009, T.V. and T.D. fought over T.D.'s having to pay child support for raising C.S. During that time, C.S. did not have visitation with her mother. C.S. made the following allegations against G.V.: "In April and May 2009, after T.V. went to bed upstairs, [G.V.] attempted to touch [C.S.'s] crotch three (3) times while giving her a backrub in the living room." R.R. at 26a. During the same time period, and after T.V. went upstairs to bed, G.V. "twice pulled down [C.S.'s] shorts and underwear to massage her buttocks while giving her backrubs in the living room." R.R. at 26a. C.S. felt uncomfortable when G.V. was massaging her buttocks but she did not tell G.V. to stop. Early in the summer of 2009, C.S. fell asleep in B.V.'s bed after receiving a backrub and she awoke to G.V. fondling her breasts. After this "incident, C.S. declined [G.V.'s] subsequent offers for backrubs." R.R. at 26a. During each incident, G.V. was clothed. G.V. acknowledged that T.V. sometimes went to bed and fell asleep before he joined her. C.S. also testified that when she would ask G.V. for a cigarette, every now and then G.V. would respond: "If I am not having sex with you, then I am not supporting you." R.R. at 75a. Finally, C.S. testified that G.V. told her on multiple occasions that she "had a cute butt." R.R. at 76a. T.V. testified that immediately before C.S. levied the allegations, T.V. had punished C.S. and C.S. was facing a loss of privileges. T.V. also testified that, in September 2009, after CYS issued the indicated report against G.V., custody of C.S. reverted to T.D., thereby ending T.D.'s obligation to pay T.V. and G.V. child support.

CYS Investigator, Karen Gerber (Gerber), testified that while she did not interview C.S., she observed the forensic interview where C.S. asserted that G.V. made inappropriate sexual comments towards her, twice pulled down her shorts and rubbed her bare buttocks, and fondled her breasts while she was sleeping in her cousin's bed. Gerber stated that when she later visited C.S., C.S. reported that there was nothing that she wanted to add or change about her original disclosure.

6

The ALJ found C.S.'s testimony credible. He also deemed credible the testimony of Gerber, and M.H. The ALJ found T.W.[9] and T.V. generally credible. The ALJ did not credit G.V.'s testimony that he did not touch C.S.'s buttocks or breasts, and that he did not attempt to touch her between her legs. In finding G.V.'s testimony not credible, the ALJ explained that G.V. was "proficient in hiding his activities from family members and neighbor T.W.," citing the fact that G.V. hid that he smoked "marijuana at his home 2-3 times per month for many years and only stopped in the last few years. This demonstrates that [G.V.] acted clandestinely at home unbeknownst to his daughter, spouse, and neighbor[.]" R.R. at 34a. The ALJ further cited inconsistencies in G.V.'s testimony, particularly his testimony that he was never alone with C.S. and his admission that he slept downstairs after his wife went to bed. The ALJ concluded that C.S.'s credible testimony supported the finding that G.V. was a perpetrator of child abuse as defined by Section 3490.4 of DPW's Regulations, 55 Pa. Code § 3490.4, and that the indicated report was being maintained consistent with the Law and DPW's Regulations. Accordingly, the ALJ recommended denying G.V.'s appeal. BHA agreed, and adopted the ALJ's recommendation and opinion as its own.

The law is well settled that credibility determinations in expungement proceedings are made by the fact finder and are not subject to appellate review. *S.T. v. Dep't of Pub. Welfare, Lackawanna Cnty. Office, Children, Youth & Family Servs.*, 681 A.2d 853 (Pa. Cmwlth. 1996). This Court has held that

> in determining whether a finding of fact is supported by substantial evidence, the Court must give the party in whose favor the decision was rendered the benefit of all reasonable

---

[9] T.W. is G.V.'s long-time friend and neighbor. He testified that he hosted G.V.'s family at his cabin on the Fourth of July and Labor Day weekends in 2009. He was surprised to learn of C.S.'s disclosures in September of 2009, because C.S. appeared to enjoy her weekend in the mountains just a few days before. He testified that G.V. treated C.S. as his daughter, and T.W. never observed G.V. act inappropriately with C.S or make sexual comments to C.S.

and logical inferences that may be drawn from the evidence of record; the weight and credibility to be accorded to the evidence is solely within the province of the attorney examiner as fact finder.

*Id.* at 856. The consistent testimony of a victim of child abuse can support the findings of fact upon which a determination that an indicated report was accurate can be made. *D.T. v. Dep't of Pub. Welfare*, 873 A.2d 850 (Pa. Cmwlth. 2005); *K.J. v. Dep't of Pub. Welfare*, 767 A.2d 609 (Pa. Cmwlth. 2001).

Here, the ALJ was faced with a "he said/she said" situation and credited the testimony of C.S. and Gerber. The ALJ relied on the credited testimony to conclude that sexual abuse or exploitation occurred because G.V. engaged in activity that was consistent with indecent assault under Sections 3101(a) and 3126(a) of the Crimes Code. The ALJ held that rubbing and looking at C.S.'s buttocks, fondling her breasts, and attempting to touch her genitals, was motivated for G.V.'s and/or C.S.'s sexual gratification, because there were no health reasons offered for the contact and because of where G.V. touched or attempted to touch C.S. Taking the testimony and the reasonable inferences drawn therefrom in favor of the prevailing party, there is substantial evidence to support the ALJ's findings.

An indicated child abuse report can be based exclusively on a child protective service investigation. *K.J.* The fact that G.V. provided other explanations for his contact with C.S. is of no moment where the ALJ did not credit those explanations. Finally, although there may have been no "direct" evidence that G.V. or C.S. experienced sexual gratification from the conduct or that such conduct was for the purpose of arousing sexual gratification, such finding is reasonably inferable from the evidence the ALJ cited. Because there was substantial evidence to sustain the indicated report of child abuse, BHA did not err by denying G.V.'s child abuse expungement appeal.

8

Based on the foregoing, we affirm the BHA's order.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G.V.,         :
      Petitioner  :
             :
    v.         :
             :
Department of Public Welfare,  :  No. 125 C.D. 2011
      Respondent  :

## O R D E R

AND NOW, this 17th day of December, 2015, the Department of Public Welfare, Bureau of Hearings and Appeals' December 29, 2010 order is affirmed.

          _____
          ANNE E. COVEY, Judge