IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A.R.,                                          :
                    Petitioner                 :        SEALED CASE
                                               :
           v.                                  :
                                               :
Department of Human Services,                  :        No. 481 C.D. 2020
                    Respondent                 :        Submitted: March 26, 2021


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
JUDGE COVEY                                        FILED:  May 7, 2021


           A.R. petitions this Court for review of the Department of Human
Services (DHS), Bureau of Hearings and Appeals' (BHA) April 22, 2020 order
adopting the Administrative Law Judge's (ALJ) recommendation denying A.R.'s
request to expunge her indicated report[1] of child abuse from the ChildLine & Abuse

---

[1] Section 6303(a) of the Child Protective Services Law (Law) defines an "indicated report"
as a report issued by DHS if an investigation "determines that substantial evidence of the alleged
abuse by a perpetrator exists based on . . . [t]he child protective service investigation[.]" 23 Pa.C.S.
§ 6303(a); *see also* Section 3490.4 of DHS' Regulations, 55 Pa. Code § 3490.4.

Registry (ChildLine Registry).[2]  The sole issue before this Court is whether BHA's decision was supported by substantial evidence.[3]  Upon review, this Court affirms.

---

[2] Section 3490.4 of the DHS Regulations defines "ChildLine" as

> [a]n organizational unit of [DHS] which operates a [s]tatewide toll-free system for receiving reports of suspected child abuse established under [S]ection 6332 of the [Law, 23 Pa.C.S. § 6332] (relating to establishment of [s]tatewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file. . . .

55 Pa. Code § 3490.4.  "The ChildLine Registry is maintained in accordance with the [Law.]" *In re S.H.*, 96 A.3d 448, 450 n.2 (Pa. Cmwlth. 2014).

[3] A.R. presents four issues in her Statement of Questions Involved: (1) whether BHA's ALJ abused his discretion by finding minor M.C.'s testimony credible and A.R.'s testimony not credible; (2) whether the ALJ's recommendation, adopted by BHA, was supported by substantial evidence; (3) whether A.R.'s constitutional rights, particularly her right to a fair hearing, were violated because Luzerne County Children and Youth Services (CYS) failed to turn over all evidence in its possession gathered during the child abuse investigation; and (4) whether A.R.'s right to a fair hearing was violated because CYS failed to turn over all evidence in its possession gathered during the child abuse investigation.  *See* A.R. Br. at 4.  Because the first and second issues are subsumed in this Court's analysis of whether BHA's decision was supported by substantial evidence, those have been combined and will be addressed accordingly herein.

A.R. raises her third and fourth issues for the first time before this Court.

> "Our case law is unwavering that when a party fails to raise an issue, even one of a constitutional dimension, in an agency proceeding, the issue is waived and cannot be considered for the first time in a judicial appeal." *K.J. v. Dep't of Pub. Welfare*, 767 A.2d 609, 612 (Pa. Cmwlth. 2001) . . . .  Further, failure to preserve an issue by raising an objection before an ALJ results in waiver.

*R.J.W. v. Dep't of Hum. Servs.*, 139 A.3d 270, 292 (Pa. Cmwlth. 2016).  The fact that A.R. represented herself before the ALJ does not mitigate the error.  "[A]ny lay person choosing to represent [herself] in a legal proceeding must, to some reasonable extent, assume the risk that [her] lack of expertise and legal training will prove [her] undoing." *City of Phila. v. Shih Tai Pien*, 224 A.3d 71, 82 (Pa. Cmwlth. 2019) (quoting *D.Z. v. Bethlehem Area Sch. Dist.*, 2 A.3d 712, 720 (Pa. Cmwlth. 2010)).  Because A.R. failed to raise the third and fourth issues before the ALJ, they are waived, and will not be addressed by this Court herein.

A.R. is minor M.C.'s (Minor) older sister. In the fall of 2018, A.R. and her boyfriend, J.K.,[4] lived with Minor[5] and her mother (Mother) in Mother's house.[6] On July 31, 2019, Luzerne County Children and Youth Services (CYS) received a referral alleging that A.R. and J.K. gave Minor alcohol and sexually abused her in the fall of 2018, when Minor was 14 years old. CYS conducted an investigation with the assistance of the local police department (Police Department). Minor participated in a Child Advocacy Center (CAC) interview, during which she disclosed that A.R. and J.K. had given her alcohol and engaged in oral and vaginal intercourse with her. Based on CYS's investigation, Minor was deemed credible and, on September 27, 2019, CYS filed an indicated report against A.R. and J.K. as perpetrators[7] of sexual child abuse against Minor. *See* Reproduced Record (R.R.) at 4a-14a.

CYS issued a Child Protective Services Investigation Report (CY-48) declaring therein that the child abuse allegations against A.R. were indicated, as facts supported A.R.'s sexual abuse or exploitation of Minor by: Unlawful Contact with a Minor (*see* R.R. at 4a-5a); Statutory Sexual Assault (*see* R.R. at 7a); Indecent Assault (*see* R.R. at 8a); Rape (*see* R.R. at 9a-10a); Involuntary Deviate Sexual Intercourse (*see* R.R. at 10a); Aggravated Assault (*see* R.R. at 10a-11a); and Sexual Assault (*see* R.R. at 12a).

---

[4] A.R.'s birth date is May 16, 1994; she was 24 years old in the fall of 2018. *See* Reproduced Record (R.R.) at 4a. J.K.'s birth date is May 14, 1993; he was 25 years old in the fall of 2018. *See* R.R. at 4a.

[5] Minor's birth date is December 6, 2003; she was 14 years old in the fall of 2018. *See* R.R. at 4a, 47a.

[6] A.R. and J.K. lived at Mother's house until June 2019. *See* R.R. at 13a.

[7] Section 6303 of the Law defines *perpetrator* as "[a] person who has committed child abuse as defined in this section. . . . The term includes . . . [a]n individual 14 years of age or older who resides in the same home as the child." 23 Pa.C.S. § 6303. Moreover, "[a] person 18 years of age or older who resides in the same home as the child[,]" "may be considered a perpetrator for failing to act[.]" *Id.*

By notice mailed October 7, 2019, A.R. was informed that she was listed on the ChildLine Registry as a perpetrator of child abuse. *See* Certified Record (C.R.) at 21. On December 28, 2019, A.R. filed an expungement appeal and requested a hearing because she disagreed with the indicated report. *See* R.R. at 2a. A hearing was held on March 2, 2020, before the ALJ, at which Minor, a CYS intake caseworker (Caseworker), Police Department Sergeant (Police Sergeant), and A.R. testified.[8] *See* R.R. at 35a-109a. On April 22, 2020, the ALJ issued a recommendation that BHA deny A.R.'s expungement appeal. *See* R.R. at 17a-33a. BHA adopted the ALJ's recommendation in its entirety. *See* R.R. at 16a. On May 22, 2020, A.R. appealed to this Court.[9] On July 27, 2020, this Court granted CYS's application to intervene.[10]

A.R. argues that BHA's decision was not supported by substantial evidence. In particular, she asserts that the ALJ abused his discretion by finding that Minor's testimony was credible, and that A.R.'s testimony was not credible.

Section 6341(a)(2) of the Child Protective Services Law (Law) authorizes "[DHS's S]ecretary to . . . expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with [the Law]." 23 Pa.C.S. § 6341(a)(2). This Court has explained:

> "[T]he proper inquiry into whether an indicated report of child abuse should be expunged is whether the report is

---

[8] J.K. attended the hearing, but declined to testify.

[9]     [This Court's] review of an adjudication in an expunction proceeding determines whether constitutional rights were violated, whether errors of law were committed, and whether the necessary findings of fact are supported by substantial evidence. Whether CYS's evidence satisfied the evidentiary standard necessary to meet its burden of proof is a question of law.

*P.L. v. Dep't of Hum. Servs.*, 236 A.3d 1208, 1211 n.3 (Pa. Cmwlth. 2020) (citation omitted).

[10] On December 28, 2020, DHS notified this Court that it would not participate in this appeal, and that it agreed with CYS's position.

accurate." *B.K. v. Dep[']t of Pub[.] Welfare*, 36 A.3d 649, 653 (Pa. Cmwlth. 2012). CYS bears the burden of showing that the indicated report of abuse is accurate and is consistent with the Law. *T.H. v. Dep[']t of Hum[.] Serv[s.]*, 145 A.3d 1191, 1198 (Pa. Cmwlth. 2016); 23 Pa.C.S. § 6341(c).

An indicated report is issued by a county agency or [DHS] if, after an investigation, "'substantial evidence' of the alleged abuse exists based on available medical evidence, the child protective service investigation, or an admission of the facts of abuse by the perpetrator." *G.V. v. Dep[']t of Pub[.] Welfare*, . . . 91 A.3d 667, 671 ([Pa.] 2014) (quoting 23 Pa.C.S. § 6303(a)). Section 6303(a) of the Law defines "substantial evidence" as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303(a). The "substantial evidence" standard set forth in Section 6303(a) of the Law is "the equivalent of the preponderance of the evidence standard." *T.H.*, 145 A.3d at 1198.

*S.H. v. Dep't of Hum. Servs.*, 228 A.3d 22, 27 (Pa. Cmwlth. 2020). "Notably, in expungement cases, the testimony of the victim alone constitutes substantial evidence to support an indicated report of child abuse." *R.J.W. v. Dep't of Hum. Servs.*, 139 A.3d 270, 283 (Pa. Cmwlth. 2016); *see also D.T. v. Dep't of Pub. Welfare*, 873 A.2d 850 (Pa. Cmwlth. 2005).

Moreover, the Law defines child *sexual abuse or exploitation*, in relevant part, as:

Any of the following:

(1) The employment, use, persuasion, inducement, enticement or coercion of a child[11] to engage in or assist another individual to engage in sexually explicit conduct, which includes, but is not limited to, the following:

---

[11] A *child* is "[a]n individual under 18 years of age." 23 Pa.C.S. § 6303.

(i) Looking at the sexual or other intimate parts of a child or another individual for the purpose of arousing or gratifying sexual desire in any individual.

(ii) Participating in sexually explicit conversation either in person, by telephone, by computer or by a computer-aided device for the purpose of sexual stimulation or gratification of any individual.

(iii) Actual or simulated sexual activity or nudity for the purpose of sexual stimulation or gratification of any individual.

(iv) Actual or simulated sexual activity for the purpose of producing visual depiction, including photographing, videotaping, computer depicting or filming.

. . . .

(2) Any of the following offenses committed against a child:

(i) Rape as defined in [Section 3121 of the Crimes Code,] 18 Pa.C.S. § 3121 (relating to rape).[12]

(ii) Statutory sexual assault as defined in [Section 3122.1 of the Crimes Code,] 18 Pa.C.S. § 3122.1 (relating to statutory sexual assault).[13]

---

[12] Section 3121(a) of the Crimes Code states relative to rape: "A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant . . . [b]y threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." 18 Pa.C.S. § 3121(a). *Forcible compulsion* is defined in Section 3101 of the Crimes Code as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S. § 3101.

[13] Regarding statutory sexual assault, Section 3122.1(a) of the Crimes Code describes it as a second-degree felony to "engage[] in sexual intercourse with a complainant to whom the person is not married who is under the age of 16 years and that person is . . . [8] years older but less than 11 years older than that complainant." 18 Pa.C.S. § 3122.1(a). *Sexual intercourse* is defined in Section 3101 of the Crimes Code as follows: "In addition to its ordinary meaning, includes intercourse per os [(mouth)] or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S. § 3101. A.R. was 10 years older than Minor in the fall of 2018. It is a first-degree felony under Section 3122.1(b) of the Crimes Code for a "person [to] engage[] in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older

(iii) Involuntary deviate sexual intercourse as defined in [Section 3123 of the Crimes Code,] 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse).[14]

(iv) Sexual assault as defined in [Section 3124.1 of the Crimes Code,] 18 Pa.C.S. § 3124.1 (relating to sexual assault).[15]

. . . .

(vi) Aggravated indecent assault as defined in [Section 3125 of the Crimes Code,] 18 Pa.C.S. § 3125 (relating to aggravated indecent assault).[16]

---

than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S. § 3122.1(b). J.K. was 11 years older than Minor in the fall of 2018.

[14] Section 3101 of the Crimes Code defines *deviate sexual intercourse* as "[s]exual intercourse per os . . . ." 18 Pa.C.S. § 3101. Under Section 3123(a) of the Crimes Code, a person who "engages in deviate sexual intercourse with a complainant . . . who is less than 16 years of age and the person is [4] or more years older than the complainant and the complainant and person are not married to each other" commits a first-degree felony. 18 Pa.C.S. § 3123(a).

[15] Section 3124.1 of the Crimes Codes specifies:

> Except as provided in [S]ection 3121 [of the Crimes Code] (relating to rape) or [Section] 3123 [of the Crimes Code] (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S. § 3124.1.

[16] Section 3125(a) of the Crimes Code provides:

> [A] person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if . . . the complainant is less than 16 years of age and the person is [4] or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3125(a).

7

(vii) Indecent assault as defined in [Section 3126 of the Crimes Code,] 18 Pa.C.S. § 3126 (relating to indecent assault).[17]

. . . .

(xii) Unlawful contact with a minor as defined in [Section 6318 of the Crimes Code,] 18 Pa.C.S. § 6318 (relating to unlawful contact with minor).[18]

---

[17] Section 3126(a) of the Crimes Code states:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and . . . the complainant is less than 16 years of age and the person is [4] or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3126(a). Section 3101 of the Crimes Code defines *indecent contact* as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

[18] Section 6318(a) of the Crimes Code states:

> A person commits an offense if he is intentionally in contact with a minor . . . for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).
>
> . . . .
>
> (5) Sexual abuse of children as defined in [S]ection 6312 [of the Crimes Code] (relating to sexual abuse of children).
>
> (6) Sexual exploitation of children as defined in [S]ection 6320 [of the Crimes Code] (relating to sexual exploitation of children).

18 Pa.C.S. § 6318(a).

(xiii) Sexual exploitation as defined in [Section 6320 of the Crimes Code,] 18 Pa.C.S. § 6320 (relating to sexual exploitation of children).[19]

23 Pa.C.S. § 6303.

In the instant matter, Minor testified at the hearing that, in October 2018, when she was 14 years old and A.R. and J.K. lived at Mother's house with her, A.R. asked Minor if she would be willing to have a threesome with A.R. and J.K., and Minor agreed. *See* R.R. at 51a-55a, 67a. She described that A.R. gave her vodka and a soft drink, which she drank, and then the three of them proceeded to A.R. and J.K.'s room. *See* R.R. at 53a.

Minor described that she sat on the bed, A.R. sat down next to her and kissed Minor on the lips and used her tongue, then J.K. did the same and also bit her lip and nicked her tooth. *See* R.R. at 54a, 56a-57a. Minor recalled that she laid on the bed, J.K. removed her pants, and A.R. kissed her nipples and her stomach, "put her mouth on [Minor's] vagina[] and licked until she was done[,]" and then penetrated Minor with her fingers. *See* R.R. at 57a; *see also* R.R. at 58a-59a. Minor stated that, when she complained to A.R. that it hurt, A.R. did not stop; rather, A.R. bit off her fingernail tips and continued. *See* R.R. at 58a-59a. She related that J.K. then pulled her close to him and licked her clitoris. *See* R.R. at 58a. After A.R. asked Minor if J.K. could "stick it in," J.K. pulled Minor's legs over his shoulders and put his penis in her vagina as A.R. watched. *See* R.R. at 59a-60a. Minor explained that, at some point he pulled out, she sat up, and J.K. put his penis in her mouth. *See* R.R. at 60a. As she performed oral sex on him, J.K. said: "[I]t felt so

_____

[19] Section 6320(a) of the Crimes Code specifies that "[a] person commits the offense of sexual exploitation of children if he procures for another person a child under 18 years of age for the purpose of sexual exploitation." 18 Pa.C.S. § 6320(a). Under Section 6320(c) of the Crimes Code, *procure* means "[t]o obtain or make available for sexual exploitation[,]" and *sexual exploitation* means "[a]ctual or simulated sexual activity or nudity arranged for the purpose of sexual stimulation or gratification of any person." 18 Pa.C.S. § 6320(c).

9

good, but he feels so bad." R.R. at 60a. Minor continued: "He took his penis out of my mouth and flipped me over to my side, . . . [h]e opened my legs and he inserted his penis and had sex with me" for approximately four minutes. R.R. at 60a. Thereafter, J.K. took his penis out of Minor's vagina, had her lay on her stomach and he penetrated her vagina from behind and "thrusted it" until he stopped. R.R. at 61a.

Minor testified that she sat up, A.R. left to smoke a cigarette, and Minor and J.K. kissed until J.K. said that he could not do anything with Minor without A.R.'s permission, and they joined A.R. to smoke. *See* R.R. at 62a. Minor recalled that J.K. asked to speak to her, they went to the back patio without A.R., and J.K. threatened that if Minor told anyone what happened, he would kill her and harm Mother. *See* R.R. at 62a-63a, 67a. They returned to A.R., finished their cigarettes, A.R. and J.K. went back to their room, and Minor went to her room. *See* R.R. at 63a-64a.

Minor stated that, while she was laying on her bed, J.K. entered her room, closed the door, and said: "I'm sorry kid, I have to finish." R.R. at 64a. She recalled that he removed her pants, penetrated her with his penis, smacked her behind and, after realizing how loud it was, he turned on the air conditioner. *See* R.R. at 63a-65a. Minor said: "[H]e continued doing what he was doing. [] [O]nce he was done, he pulled out and ejaculated onto my back." R.R. at 65a. Minor explained:

> I laid there while looking for something to clean up with, and then he said ["]I should be a gentleman, shouldn't I?["] And he grabbed a towel off the floor and wiped it off, and then once he left, I was laying down in my bed scrambling to find my underwear, found them and I put them on and went back to bed.

10

R.R. at 65a. Minor testified that, she, A.R., and J.K. smoked cigarettes and went to Taco Bell the next morning and, when J.K. asked if this was going to be a thing, Minor did not say anything, and A.R. said no. *See* R.R. at 65a-66a.

Minor stated that she was upset, but did not tell anyone about the incident because J.K. lived with her and Mother and she did not want to take the chance of him harming her or Mother. *See* R.R. at 67a-68a. Approximately one month later, Minor attempted suicide and was hospitalized. *See* R.R. at 68a-69a. She still did not tell anyone about the incident because she feared J.K. would harm Mother while Minor was in the hospital. *See* R.R. at 68a-69a. She declared that she finally told Mother about the incident in July 2019, after A.R. and J.K. had moved out and she felt safe. *See* R.R. at 69a-71a. Mother took her to the Police Department to report the incident. *See* R.R. at 70a-71a. Minor admitted that she and A.R. always fought, and she has not had any contact with A.R. or J.K. since July 2019. *See* R.R. at 71a.

Police Sergeant testified that, after he received the report in July 2019 that A.R. and J.K. had sexual relations with Minor in the fall of 2018, and there was alcohol involved, he notified CYS and arranged Minor's CAC interview. *See* R.R. at 76a-77a, 83a. He recalled that he attempted to interview A.R. and J.K., but A.R. referred him to her lawyer and J.K. did not respond. *See* R.R. at 78a-79a. He declared that the criminal investigation into the allegations was still ongoing. *See* R.R. at 80a-81a.

Caseworker testified that, when she received the initial referral that Minor had been sexually abused by household members A.R. and J.K, Police Sergeant asked that she allow him to contact A.R. and J.K. *See* R.R. at 86a-88a. Caseworker was aware that Minor's CAC interview had been arranged, and ensured that Minor was safe in the meantime. *See* R.R. at 87a-89a. Caseworker stated that she mailed letters to A.R. and J.K., and A.R.'s attorney responded about scheduling

11

an interview with her. *See* R.R. at 88a. Caseworker eventually interviewed A.R., but not J.K. *See* R.R. at 90a-91a. Caseworker recalled that A.R. denied Minor's allegations that the incident occurred, and claimed that the allegation arose from the constant turmoil between her, Mother, and Minor. *See* R.R. at 90a-91a.

Caseworker described that she observed Minor's CAC interview, she conducted a supplemental interview, and she heard Minor's testimony, all of which were consistent. *See* R.R. at 88a-90a. Caseworker explained that, based on her investigation, she issued the CY-48, reflecting that A.R. and J.K., who were household members in their early 20's, were perpetrators of abuse of Minor by sexual assault, unlawful contact with a minor, rape, involuntary deviate sexual intercourse, indecent assault, and statutory sexual assault. *See* R.R. at 91a-94a, 96a-97a; *see also* R.R. at 4a-12a.

A.R. acknowledged that she and J.K. lived in Mother's house with Minor in the fall of 2018, and it was not out of the ordinary for them to have been alone together. *See* R.R. at 103a-104a. She denied that the incident occurred. *See* R.R. at 104a. She read the CY-48 aloud and declared that what she heard Minor testify to at the hearing differed from the details reported in the CY-48, specifically in terms of whether the vodka was mixed with Pepsi or iced tea, who was sitting where on the bed, and which of the two digitally penetrated Minor. *See* R.R. at 99a-102a. A.R. stated that A.R. and Mother had a fight a few days before Minor reported the alleged incident and alluded that Minor "trie[d] to defend [Mother] in some sick way." R.R. at 103a.

Based upon the evidence, BHA adopted the ALJ's conclusion that A.R.'s appeal should be denied, reasoning:

> [Minor] testified in a clear, consistent manner and was explicit in detailing [A.R.'s and J.K.'s] sexual abuse. Her testimony is supported by the statements she previously made as reported by the other witnesses. Furthermore,

12

there were not any inconsistencies in her testimony, and her testimony was not contradicted by specific testimony from any other witnesses. Therefore, her testimony is deemed credible.

At the fair hearing, [Caseworker] testified about [CYS's] investigation. On July 31, 2019, [DHS] received the initial referral indicating that [A.R. and J.K.] sexually abused [Minor]. After the referral, [Minor] participated in a [CAC] interview in which she revealed that [A.R. and J.K.] had given her alcohol and engaged in oral and vaginal intercourse with her.

Based on the [CYS's] investigation, [Minor] was deemed credible, and [A.R. and J.K.] were indicated for child abuse. [Caseworker] testified in a straightforward manner, lacking any interest in the outcome of the case. Thus, her testimony is deemed credible.

[DHS] also relied on testimony from [Police Sergeant, who] testified about his investigation into the report that his office received. [Police Sergeant] interviewed [Minor] and observed the CAC interview. [Minor] disclosed an incident of sexual activity with herself and both [A.R. and J.K.] in which alcohol was involved. [Police Sergeant] testified in a straightforward manner, lacking any interest in the outcome of the case. Thus, his testimony is deemed credible.

[] A.R. also testified at the fair hearing. [A.R.] denied that the incident described by [Minor] ever occurred. [A.R.] argued that she does not get along with [Minor] and the allegations are not true. However, other than accusing [Minor] of fabricating these allegations, [A.R.] provided no evidence to discredit [Minor's] testimony. [Minor] testified clearly and in great detail about the events in question, and there is nothing to indicate she had any motive to fabricate these allegations. While [] A.R. argued there were inconsistencies such as [Minor's] statement at the CAC interview that she was given vodka and [i]ced [t]ea while testifying at the fair hearing to being given vodka, these statements are not inconsistent. They are consistent statements, and at worst, [Minor] simply focused on the alcohol at the fair hearing because it was

13

used to coerce [Minor] into engaging in sexual acts with [A.R. and J.K.]

Ultimately, [] A.R. provided nothing more than general denials, which are self-serving at best, and she has not provided any details to undermine [Minor's] testimony. As a result, [] A.R. is not credible as a witness.

. . . . [Minor's] testimony, supported by the testimony of the [] Caseworker and the [P]olice [S]ergeant, is sufficient to meet [CYS's] burden of proof. [] A.R.'s general denial of inappropriate contact with [Minor] was clearly contradicted at the hearing. Her assertions that the allegations were fabricated are unsupported and unpersuasive. [] J.K. did not offer any argument or testimony to refute [Minor's] statements. In looking at the totality of the evidence, [CYS] has proved, by substantial evidence, that [A.R. and J.K.] sexually abused the subject child.

ALJ Rec. at 16-18; R.R. at 31a-33a.

The law is well settled that credibility determinations in expungement proceedings are made by the fact finder and are not subject to appellate review. *S.T. v. Dep't of Pub. Welfare, Lackawanna Cnty. Off., Child., Youth & Fam. Servs.*, 681 A.2d 853 (Pa. Cmwlth. 1996). "In child abuse expunction proceedings, the [BHA], as the [DHS] Secretary's designee, is the ultimate finder of fact, and the ultimate arbiter of the weight to be assigned to the evidence presented." *S.K. v. Dep't of Hum. Servs.*, 206 A.3d 644, 652 (Pa. Cmwlth. 2019) (quoting *Beaver Cnty. Child. & Youth Servs. v. Dep't of Pub. Welfare*, 68 A.3d 44, 47 n.4 (Pa. Cmwlth. 2013)); *see also D.T.*

This Court has expounded:

[I]n determining whether a finding of fact is supported by substantial evidence, the Court must give the party in whose favor the decision was rendered the benefit of all reasonable and logical inferences that may be drawn from the evidence of record; the weight and credibility to be

14

accorded to the evidence is solely within the province of the attorney examiner as fact finder.

*S.T.*, 681 A.2d at 856.

Here, the ALJ was faced with a "she said/she said" situation and credited the testimony of Minor over A.R. The ALJ relied on Minor's credited testimony to conclude that sexual abuse or exploitation occurred at A.R.'s and J.K.'s hands in the fall of 2018. BHA adopted the ALJ's adjudication in its entirety. In so doing, BHA found that Minor was a competent and credible witness and A.R. was not. Those determinations are not subject to this Court's review. *See S.T.*

Giving Minor the benefit of all reasonable and logical inferences that may be drawn from the evidence, as it must, this Court holds that substantial evidence supported the ALJ's recommendation that CYS met its burden of showing that the indicated report of abuse is accurate and is consistent with the Law and, thus, BHA did not err by denying A.R.'s expungement appeal.

Based on the foregoing, this Court affirms BHA's order.

_____
ANNE E. COVEY, Judge

15

A.R.,                                    :
           Petitioner            :       SEALED CASE
                              :
           v.                        :
                              :
Department of Human Services,            :       No. 481 C.D. 2020
           Respondent            :

## O R D E R

AND NOW, this 7th day of May, 2021, the Department of Human Services, Bureau of Hearings and Appeals' April 22, 2020 order is affirmed.

_____
ANNE E. COVEY, Judge